### DAVID CHANDLER vs. THE STATE — Appeal from Travis County.

A judgment will not be reversed for an erroneous instruction unless the applicability of the instruction to the issue may be seen from the record. [4 Tex. 8.]

A party seeking to reverse a judgment must show that the judgment *is erroneous*. [*Ante*, 297.]

To authorize a reversal it must appear that the error complained of was in a matter material to the issue.

The felonious killing of a slave without malice, by a free white person, is manslaughter. [13 Tex. 575; 20 Tex. 151.]

The facts of this case, so far as the same are necessary to present the questions discussed and adjudicated in this court, are stated in the opinion.

*Gillespie* and *Hancock*, for appellant, insisted that there was error in the charge of the judge "that the admissions or confessions of the accused to a witness were the highest character of testimony to establish the guilt of the accused, and upon such testimony the jury were authorized to convict;" and they cited in support of this position, Joy on the admissibility of confessions, Law Lib. vol. 37, pp. 12, 65 and 111; 1 Phil. Ev. 166–67; 1 Bibb, 611; 4 Littell, 186; Hardin, 547; 1 Pirt. Dig. 376.

They also insisted "that the act of 1840, adopting the common law, brought with it the common law offenses, [**306**] and the common law meanings, and expressions and definitions. It did not include within its operation offenses committed either by slaves or upon them." Phil. Dig. p. 185, sec. 19; 1 Hill, 454; 2 Bailey, 98.

We must look to our own laws for the punishment of offenses of this character, as they could not be punished at

common law; and by our laws there is no such offense as manslaughter committed on the body of a slave by a free white person. Acts of 1840, 172; id. 1837, 87; Const. of the State, art. 8, sec. 3; 3 McCord, 533.

There is in the very nature of slavery a difference and distinction between the acts and conduct of a white man to a negro, and the acts of a white man to his fellow. Starkie, 524, note.

*Lee*, same side.

*Harris*, Attorney General, *contra*.

"A full confession of guilt, although it be but presumptive evidence, is one of the surest proofs of guilt." 1 Stark. 58; 1 Chit. 570; 1 Phil. Ev. 110.

There being no statement of facts, the record does not show that the instructions were applicable, and therefore the court will not reverse the judgment. 14 Ohio, 473, 474, 479, 480.

The evidence will be considered sufficient to sustain the verdict unless the party excepting sets out all the evidence in his bill. 8 Greenl. 19; 3 Mass. 551; 9 Cranch, 233, note; 3 Yerg. 157.

Slaves are included in the generic term "persons," as used in our laws in reference to crimes and offenses. Those statutes which specially provide punishment for certain offenses, committed on the bodies of slaves, were intended to throw additional guards and shields around that class of "persons." The felonious slaying of a slave, without malice, is manslaughter. 1 Yerg. 156.

[**307**] Mr. Justice WHEELER delivered the opinion of the court.

David Chandler was indicted for murder, charged to have been committed upon the person of "one Claiborne, a negro man, who theretofore had been a slave of one David Conner."

The accused was put upon his trial and the jury returned a verdict of "guilty of manslaughter."

His counsel moved the court for a new trial, which being refused, they moved in arrest of judgment. This motion was also overruled, and the prisoner appealed.

It appears from the bill of exceptions that the court, among other matters, instructed the jury, at the instance of the prosecution, "that the admissions or confessions of the accused were evidence of the highest order to establish his guilt, and upon such testimony the jury were authorized to convict;" that the court was requested by the defendant to charge the jury "that the relation between a white man and a slave is different from that between white men — that if a slave raises his hand against a white man, the white man has then a right to use force sufficient to put down the opposition. And if the slave be unintentionally killed by the white man, it is not the crime of murder or manslaughter. All of which the court charged the jury except as to manslaughter; but charged that it might or might not be manslaughter according to the circumstances of the case." The court also charged "that a white man could be guilty of the crime of manslaughter upon the body of a slave."

It is now insisted that the judgment ought to be reversed on two grounds.

1st. That the court erred in the instruction given to the jury, as to the effect, as evidence, of admissions or confessions.

2d. That the court erred in ruling, both in the instructions to the jury and on the motion in arrest of judgment, that a freeman may be convicted of manslaughter for the homicide of a slave.

[**308**] 1. The record contains no statement of facts and none of the evidence accompanies the bill of exceptions. It is manifest that the propriety of the instruction, which is the subject of the first objection, must depend upon the evidence upon which that instruction was based. That evidence not being before us, we have no means of revising the charge, in reference to its correctness as applied to the case in evidence; nor of ascertaining whether, indeed, it had any application whatever to the evidence, or could by any possibility have influenced the verdict. As it appears in the record, the instruction complained of must be regarded as a mere abstract proposition, and cannot authorize a reversal of the judgment. A judgment will not be reversed for an erroneous instruction,

unless the applicability of the instruction to the issue may be seen from the record. It was so decided by this court in the case of Holman v. Britton, *ante*, 297, and cases cited; and see 7 M. R. (N. S.) 649–50; 4 Ham. 79, and cases there cited; 3 Ala. 419; 1 Humph. 473. The reason of the rule is that every reasonable presumption must be indulged in favor of the verdict and judgment below; that it devolves on the party seeking a reversal to show that there is error in the judgment; and that unless he presents the case in such a manner as to show the error, *the presumption in favor of the correctness of the judgment must prevail.* Though the instruction complained of may not have been correct as a legal principle or abstract proposition, yet as it does not appear to have been material, it can constitute no ground for reversing the judgment. To authorize a reversal *it must appear that the error complained of was in a matter material to the issue.* 14 Ohio, 386.

2. It remains to inquire whether the court erred in ruling that a freeman may be convicted of manslaughter for the homicide of a slave. This was the question considered in the case of Fields v. The State of Tennessee, 1 Yerg. 156. The supreme court of that state seem to have examined and considered the question with great care, and with [**309**] reference to all the authorities and principles which have been invoked in the case before us. After a very elaborate and thorough investigation of the subject, conducted, doubtless, with means of information to which we have not access, that learned court decided that, by the common law, the felonious killing of a slave without malice is manslaughter.

We deem it unnecessary to enter upon a particular examination of the grounds upon which this conclusion is based. It seems so consonant to reason and principle as scarcely to require the support of argument or authority. The only matter of surprise is that it should ever have been doubted.

In the absence of legislation, the common law is, and since the adoption of the constitution of the late republic ever has been, in criminal cases the rule of decision.

Our legislation applicable to the question leaves no doubt that the ruling of the court in the case before us was in ac-

cordance as well with the sense of the legislative authority as with the uniform practice of the courts in the administration of the criminal laws. As remarked in argument, slaves have uniformly been treated as *persons*, in the contemplation of those laws. And thus considered, the statute makes no difference in respect to this offense, whether it be perpetrated by or upon the person of a slave. The case in either event would come within the provision of the 3d section of the act "punishing crimes and misdemeanors," which enacts that "every *person* who shall kill another without premeditated malice shall be deemed guilty of manslaughter." 1 Stat. 187, sec. 3.

At the same time that the legislation of this country makes certain distinctions between slaves and freemen respecting particular crimes and offenses, it is not perceived that where not otherwise provided, or where the relations arising out of the institution of slavery do not necessarily imply the reverse, the general laws providing for the punishment of crimes do not equally apply to both. It seems especially to have been the intention of our legislation upon that subject to throw [**310**] around the *life* of the slave the same protection which is guaranteed to a freeman. The 4th section of the act of 1840, "concerning slaves," 4 Stat. 172, declares "that if any person shall murder any slave, or so cruelly treat the same as to cause death, the same shall be felony and punished as in other cases of murder." The constitution of the state, art. 8, sec. 3, provides that "Any person who shall maliciously dismember or deprive a slave of life shall suffer such punishment as would be inflicted in case the like offense had been committed upon a free white person." These provisions seem to have been intended to make the felonious homicide of a slave punishable in the same manner as that of a freeman.

It is not pretended that the *murder* of a slave is not a crime indictable and punishable in like manner as that of a free white person. Manslaughter is treated in the law, not so much as an independent and distinct substantive crime, as the *extenuation* or mitigation of the crime of murder. Under an indictment for murder the offender may be convicted of man-

slaughter. The homicide being proved, the presumption is that the crime is that of murder, but it is the privilege and right of the accused to extenuate, if he can, his crime from that of murder to manslaughter, by showing in his defense such facts as rebut the proof or presumption of malice.

But the doctrine contended for would lead to the singular consequence of denying to the accused the right to extenuate a homicide, proved to have been committed by him, by any proof whatever, or else of converting that *extenuation* into a *justification* of the homicide — an absurdity, as we think, which has no foundation in our system of criminal jurisprudence.

We are of opinion that there is no error in the judgment of the district court, and that it is affirmed.