### REECE HUGHES V. DAVID LANE.

Matter relied upon in avoidance unsupported by evidence, does not warrant the court in submitting the issue presented by it to the jury, and a judgment based upon a verdict sustaining the same will be reversed.

Under an issue claiming the benefit of the exception in favor of aliens, provided for in the statute of limitations, it must appear, to sustain that issue, if such aliens were of foreign birth, that they were not residing in Texas on the day of the Declaration of Independence.

A judgment final on demurrer in favor of the defendant, in an action of trespass to try title, is not such a decision of the case as the statute giving a second action contemplates, and therefore does not interrupt the running of the statute of limitation.

A plaintiff relying on an exception in his favor, to the running of the statute of limitation pleaded by the defendant, must specially plead the exception by way of replication. This rule is as applicable in an action of trespass to try title as in any other case.

APPEAL from Cass. Tried below before the Hon. W. S. Todd.

This was an action of trespass to try title, brought by David Lane against Reece Hughes, for a tract of land; it being the second suit brought by the plaintiff against the defendant for the same land. The first suit was filed in August, 1847, and at the March term of the District Court, on demurrer and special exceptions to the petition, judgment was rendered for the defendant. In the Supreme Court, the judgment was affirmed in May, 1854, without reference to the merits, on the transcript of the record filed by Hughes the appellee, the appellant failing to file the transcript within the time prescribed by law. At the same term, and it seems on another transcript, the said court dismissed the appeal for want of an assignment of errors, and because there was no notice of appeal given in the court below. This second suit was filed January 12th, 1855, the petition alleging the institution and disposal of the first suit, and claiming the benefit of the law authorizing a second suit within twelve months after the determination of the first. The defendant pleaded the statutes of limitation of three, five and ten years, claimed the value of his improvements under the "good faith" law, pleaded "not guilty," and specially

that the headright certificates of Henry L. Lane, under which plaintiff claims the land sued for, were procured by fraud, in this, that the said David was not a citizen of the Republic of Texas on the 2d day of March, 1836, nor at any time previous to that date; that if he ever resided in said State, that he abandoned the country before his death, and took up his residence in the State of Arkansas. That the proof made by the plaintiff and the heirs at law of the said Henry L. Lane before the board of land commissioners of Red River county, to procure the issuance of said headright certificate, was false and fraudulent, the plaintiff and the heirs aforesaid well knowing said falsity and fraud. The defendant pleaded that a portion of the land sued for, was included within the limits of a prior survey for one Joseph Burleson, whose superior title he set up, and on the trial the fact was admitted by the parties, and so far as that portion was concerned, the verdict and judgment was rendered in accordance with those facts. The defendant also pleaded in bar the rendition of the judgment in the first suit in the District Court between the same parties for the same tract of land, unreversed and not appealed from.

The plaintiff filed no replication or other pleading than his original petition, which is in the ordinary form of actions of trespass to try title, alleging the ownership of the land as follows: "that on the fourth day of May, 1851, and within three years last past, he was the owner and possessor of his own right of the following tracts or parcels of land, to wit;" setting forth a description of the land by the field-notes.

The plaintiff's title, so far as it need be stated for the purposes of a statement of the case, rested upon a first class certificate for one-third of a league of land, and survey under it, granted to Henry L. Lane, as "an emigrant to Texas in February, 1836," and remaining a citizen of the Republic; and a deed from William and Elizabeth Lane made on the twenty-third day of May, 1847; claiming in support of his title, that the said grantors to him were the sole heirs of Henry L., the original grantee, who, as he alleged, died intestate, without leaving a surviving wife or lineal descendants.

The testimony showed that the defendant had been in the occu-

pancy and cultivation of the land from the year 1839 up to the time of trial, under certificates and surveys of one Burris, and one Robert Hughes, and the patented survey of said Burleson, claiming under them by deeds, transfers, &c., said surveys conflicting with the Lane survey.

It was proved that Henry L. Lane was the son of William and Elizabeth Lane, and formerly lived in the State of Tennessee; that he came to Texas during the spring of the year 1836, and resided in what is now Bowie county, and died during the summer of the same year, as witnesses understood, in the State of Arkansas. One of the witnesses (Talbot) stated that he saw him a few days before he started on the trip on which he died, and he told him he intended going to Tennessee to bring out his parents to Texas.

Witness Wooten stated that Lane was a single man, and died in Washington county, Arkansas. Witness Fort stated that he never was a married man. It was not proved where William and Elizabeth Lane resided; the fact, as to their place of residence at any period of time, does not otherwise appear than as suggested in the testimony of the witness Talbot. The plaintiff offered in evidence a conveyance to himself from William and Elizabeth Lane, to the land.

The court charged the jury, that if William Lane and Elizabeth Lane were the heirs of Henry L. Lane, and were at the time of the death of said Henry L. residing in Tennessee, or out of the Republic of Texas, they were alien heirs, and under the constitution and laws in force, were entitled to nine years within which time to become citizens, and either themselves take possession of, or sell the land; and if they did within that time sell the land to plaintiff, no statute of limitations would avail the defendant during the continuance of the nine years, or at least up to the date of our annexation to the United States. To which the defendant excepted, and assigned the same as error for revision. The jury found that the defendant was entitled to three hundred and thirty-nine and one-half acres of the land that is contained in the Burleson survey; and that the plaintiff is entitled to the balance of the tract of land sued for, and two thonsand three hundred and twenty-five dollars damages. Judgment rendered accordingly.

*W. B. Ochiltree*, for the appellant.—It was not until the argument of this case to the jury, by the learned counsel for the appellee, that the appellant was informed of the grounds upon which the appellee expected a recovery. We were then, for the first time, informed that the father and mother of Henry Lane, at the date of his death, were his heirs, and that they were aliens and were entitled to the nine years allowed under the statute to assert their claim. And here is the main point to be decided by the court in this case.

The petition is in the nature of an ordinary action to try title and to recover damages under the statute. David Lane simply claims to own the land described in his petition; charges the trespasses usual in such cases upon the appellant, and prays for the usual relief; the defendants answer with exceptions and the pleas of the statutes of limitations.

No replication is filed to the pleas filed by the defendant; no amendment to their petition; no notice, in fact, of any character whatever to apprise the opposite party of their reliance on a defence against the statute of limitation, beneath which, under the decision of this court in Andrews v. Cryer, the same were to be crushed out.

Notwithstanding this state of the pleadings, the presiding judge charged the jury as follows: "If you believe, from the evidence, that William Lane and Elizabeth Lane were the heirs of Henry L. Lane, and they were, at the time of the death of Henry L., residing in the State of Tennessee, and out of the Republic of Texas, they were alien heirs, and under the constitution and laws in force were entitled to nine years to become citizens, and either themselves take possession of or sell the land, and if they did, within that time, sell the land to plaintiff, no statute of limitations would avail the defendant during the continuance of the nine years, or at least up to the date of our annexation to the United States."

To this charge of the court the defendant below excepted, because the same was irrelevant to the issues presented by the pleadings in the case, and calculated to mislead the jury and to divert their minds from the true issues in the case.

The court below certainly erred in permitting evidence of the alienage of William and Elizabeth Lane to go to the jury, there being no allegations in the pleadings to sustain such proof. (Rivers v. Foote, 11 Tex., 670; Paul v. Perez, 7 Tex. R., 338.)

The court erred in charging upon a question not raised by the pleadings.

Special matter relied on for a recovery over the ordinary pleas allowed by law must be specially averred.

A verdict rendered for plaintiff on pleas of defendant, without replication, is error. (3 Porter, 287; 2 Stewart, 433; Ala. R., 137.)

It is one of the first principles of pleading that it is necessary to state facts so that the court, whose duty it is, can declare the law arising on these facts, and to apprise the opposite party what is meant to be proved in order to give him an opportunity to answer or traverse it. (Mills v. Martin, 19 Johnson, 7; Olcott v. Allen, 6 N. H., 516.)

The law is not satisfied with inferences when the fact to be inquired into is material, and may be traversed. (Mills v. Martin, *supra*.)

Facts must be set forth with certainty, by which is meant a clear and distinct statement of facts, which constitute the cause of action or ground of defence, so that they may be understood by the party who is to answer them; by the jury, who are to ascertain the truth of the allegations; and by the court, who are to give judgment. (Comyn Dig., title, Pleader, 6 and 17; Co. Littleton, 303.)

The same principle is ably asserted in Mimms v. Mitchell, 1 Tex., 443.

In Cryer v. Andrews, I am led to believe that the alienage of the Arkansas heir was specially averred. At any rate, the contest was between privies; and I have entertained the hope that this court would look at that decision again; reasons must be cogent indeed which would give rights to those who never snuffed powder in defence of the country, superior to those who bore the heat and burthen of the struggle for liberty.

But, admitting the petition to have been sufficient to authorize

introduction of evidence of the alien character of William and Elizabeth Lane, yet I contend that the evidence offered by the appellee to prove this fact, so overwhelming to the rights of the appellant, was not sufficient to authorize the strange charge of the court and the consequent verdict of the jury. The answer of John A. Talbot to the second interrogatory propounded to him—said answer to be found at the bottom of page 49 of the transcript—presents every particle of testimony which, either directly or by implication, went to establish the fact that William and Elizabeth Lane were not residents of the Republic of Texas.

This court might well doubt whether it was upon the question of alienage that the jury founded their verdict, so meagre and so entirely insufficient is the proof. But when we look at the charge of the court, which alone could have been predicated upon the argument of counsel, and the testimony of Talbot above referred to, we can account for the verdict of the jury. Indeed the proof of the appellant's rights under his occupancy for twenty years; his locations and surveys upon genuine valid certificates, which had, by lapse of time prescribed by law, matured into perfect titles, was so plain and so palpable that nothing but the iron wheel of the principle announced in Cryer v. Andrews, as charged by the court, could probably have reached them. If this is not the case, then is the appellant entitled to a new trial, because the jury found palpably against the law and the evidence.

*D. S.. McKay*, also, for appellant.—Plaintiff in the court below had no cause of action; for his laches had taken away his right, even if he ever had any. This action was a second action, brought by virtue of section 7, act 1840, and 3d section, act 1844, for trying titles to land. This second suit is allowed only by virtue of said statutes, and is in derogation of defendant's rights, and the rule "*nemo bis vexari.*" To avail himself of it, the plaintiff must bring himself clearly within the statute.

The statute gives the right upon a "verdict and judgment" against plaintiff; no where does it speak of the action except in connection with "verdict and judgment." The judgment in the first action was upon demurrer.

Judgment for defendant vests the title in him; but does not conclude plaintiff until after one year.

This year takes away plaintiff's right of action, unless he saves it by compliance with the statute. During this year, defendant's title is deprived of the "repose and quiet" conferred by statutes of limitation. But disturbance for no longer period is contemplated by the statute, unless by a continuation of the suit in the courts, by a new suit instituted within a year, or by "appeal" after "verdict and judgment."

Does this appeal include writ of error? Not, if the above interpretation is correct. If plaintiff can appeal by writ of error, then he is entitled to all the rights conferred by the writ—the right to disturb defendant after two year's repose in his title; and then, to a second action, if judgment go against him on his appeal. Judgment against appellee in this court was upon a writ of error from the court below, and on a judgment not final. The judgment on first suit became conclusive by appellee's laches.

Again, to entitle a plaintiff to a second action after a judgment against him in the Supreme Court, the statute certainly contemplates a judgment on the merits. If plaintiff appeals, and fails to prosecute his appeal, he gains no right by a judgment of dismissal against him; nor by affirmance without reference to merits. Were it otherwise, and if plaintiff is entitled to writ of error, he could, at any time in two years, sue out the writ, and permit judgment against him, for the purpose of vexing defendant with a second suit. The judgment of the Supreme Court on which appellee bases this action, was not on merits. It was as mere dismissal under direction of the statute. (Hart. Dig., Art. 2938.) Appellee not having brought himself within the requirements of the statute, can not maintain his action as a second suit. It is an original suit, and he is barred of his action.

If an action be brought within the period of limitation, "and after the expiration of that period, the plaintiff be *non-suited*, the act of limitation is a good plea to another action for the same cause, at any time." (Ang. on Lim, § 328.) Thus, if plaintiff appeals and fails to prosecute his appeal to effect, or is "*non*

*suit,*" he can claim no benefit from the statute giving another action. (Ang. *supra;* Ivins v. Schooley, 3 Hanson, 269; Richards v. Mar. Ins. Com., 8 Cranch, 84.) The latter case says: "But in no case of a voluntary abandonment of an action, has an exception to the statute of limitations been supported." The former says: "there is no such saving in case of non-suit."

Appellant was, for a long time previous to the institution of appellee's first suit, in adverse possession. Limitation had begun to run against appellant; and though interrupted by the first suit, the laches in his appeals relates back to the time the statute began to run; and so far as the present suit is concerned, the period of limitation was continuous from the adverse possession. The statute had run for more than fifteen years before this suit.

The statute of limitation, Jas. 1st, contains a provision for second suit similar to our own; and this or a similar one has been adopted in most of the States. To the decisions under these laws, we may look for the right acquired by appellee under our law. (Barino v. McGee, 2 McCord, 453; Harris v. Dennis, 1 Serg. & Rawle, 236; Swan v. Littlefield, 6 Cush., 417, and 3 Hanson, 269; 8 Cranch, 84, cited above.) All which show that appellee is not within any exception to the general law of limitation.

*John T. Mills,* for appellee.—There is no question as to appellee's having the superior title and perfect right to the land found by the verdict rendered in this case, unless he has lost the same by the lapse of time in favor of appellant's adverse possession.

What are the facts? Appellee, in the spring of 1847, purchased of the heirs of Henry Lane, their right to the land in suit, and in the fall of that year instituted his suit to recover possession. The suit was an ordinary one of trespass to try title, and the chief ground of complaint in this court, urged as a reason for reversing the judgment rendered in the District Court, is that the defendant below was not informed, until the trial of the cause, that the plaintiff would insist on the nine years' statute in behalf of alien heirs. The fact as to whether the vendors of the appellee were or were not alien heirs at the time of *descent cast*, has been determined by the jury from the evidence introduced, and it is

submitted that the same is sufficient, at least, to create a *prima facie* case, which the entire failure of appellant to rebut will preclude this court from interrupting.

The case of Dangerfield v. Paschal, 20 Texas, 536, is in point—*res adjudicata*, as to the plaintiff's right to a second suit, and the case of Cryer v. Andrews, 11th Texas, 170, determines as to the limitation which would affect his right to recover. The first suit was instituted in less than twelve months after the purchase from the alien heirs, and within less than nine years from the act of 1841, and up to this time it is submitted that no statute of limitations of either three, five or ten years, has intervened in favor of the appellant.

WHEELER, C. J.—The defence mainly relied on was the statute of limitations. The plaintiff relies on two grounds as an answer to this defence. He insists, first, that his case is within the exception to the running of the statute in favor of alien heirs; and, secondly, that the running of the statute was interrupted by the former suit, brought in 1847. The court sustained the case of the plaintiff upon both grounds; and the question to be determined is whether these rulings of the court were correct.

Upon the first point we are of opinion that the evidence was not sufficient to warrant the court in applying to the case the exception in favor of alien liens. Granting that it sufficiently appears that the parents of Henry L. Lane, the grantee, were his heirs, there is no evidence that they were aliens at the time of the descent cast. There is no proof of their assumed alienage. It is scarcely necessary to say, that the observation of the witness, Talbot, that Henry L. Lane told him shortly before his death, when about to start upon a journey, that " he intended going to Tennessee to bring out his parents to Texas," is no evidence that his parents were aliens ; and that is the evidence upon which the court must have proceeded in charging to the jury upon the effect of the supposed alienage of the heirs of Henry L. Lane, and in overruling the motion for a new trial. If it were proved that the parents of Henry L. Lane resided in Tennessee at the time of his death, it would not follow that they were aliens. If persons of

foreign birth, it must appear that they were not residing in Texas on the day of the declaration of independence. (Const. Rep. Genl, Prov. Sec. 10.) The evidence was manifestly insufficient to amount to proof of alienage ; and we are of opinion, therefore, that the court erred in the instruction to the jury upon that subject and in refusing the motion for a new trial; for which, the judgment must be reversed. In view of another trial it is material to decide the remaining question. And it is to be observed that the former suit was disposed of by the judgment of the court sustaining a demurrer to the petition. Is that such a decision of the case as the statute giving a second action contemplates ? We think not. The 7th section of the act providing the action of " trespass to try title," gives a second action, to be instituted within one year, where verdict and judgment shall have passed against the plaintiff in the first suit. (O. & W. Dig. Art. 2043.) This section of the act of 1840 was so amended by the act of 1844 as to provide that " in case a verdict and judgment should pass " against the plaintiff, and he should appeal to the Supreme court, and that court should decide against him, he shall have one year from the decision of the Supreme court to bring a second action. (Id. 2049.) Both statutes speak of a verdict and judgment, and manifestly intend a decision of the case upon the facts, and a judgment upon the merits which, but for the statute, would be a bar to another action for the same cause. The present is not such a judgment. The effect of a judgment sustaining a demurrer in our practice is simply a dismissal of the suit, if the plaintiff fails to amend. It is the same whether the demurrer be general or special, and it has never been held to be a bar to the bringing of another suit for the same cause. Where a demurrer is sustained, the plaintiff has his election to amend, or to suffer the case to be dismissed and bring another suit supplying the deficiency in his former petition, or he may appeal from the decision and have the judgment sustaining the demurrer revised, and if erroneous, corrected. It is the right of the plaintiff in all cases where a demurrer is sustained, though it be a general demurrer, to amend, and thus obviate the effect of the demurrer. If he fails to amend, the consequence is that the case is dismissed. The dismission of

the case, therefore, is the immediate consequence rather of the failure to amend, than of the judgment upon the demurrer; and whatever the form of the judgment, its effect, it is conceived, is the same. It operates a dismissal of the suit merely and is not a bar to another suit for the same cause, It manifestly is not such a decision of the case upon the merits as the statute providing a second action contemplates. The former suit not having been prosecuted to a final decision and judgment upon the facts and merits of the case, is not within the provision of the statute giving a second action.

In the case of Dangerfield v. Paschal, 20 Tex. R., 536, the decision of the merits of the case upon the facts was submitted to the court upon a demurrer to evidence. The jury were discharged and the decision of the court substituted for the verdict of the jury. The effect of the judgment was the same as if it had been rendered upon a verdict. It was very different from a judgment upon a demurrer to the petition.

The effect of the decision sustaining the demurrer being merely the dismissal of the case, a further consequence is that the suit did not interrupt the running of the statute of limitations. In the case of Shields v. Boone (22 Tex. R., 193) we decided that where a nonsuit was taken by the plaintiff, the suit did not interrupt the running of the statute. And the doctrine is the same where the nonsuit is not voluntary, but is by the judgment of the court. (Angell on Lim., Sec. 328.) The principle of the rule applies equally to the present case. It was the fault of the plaintiff that he did not prosecute his former suit to effect. If his petition was defective he should have amended, and thus have obviated the consequence of the decision upon the demurrer; if not defective, he should have prosecuted his appeal or writ of error to effect, and obtained a reversal of the judgment sustaining the demurrer. But he failed to appeal, and though he obtained a writ of error he failed to prosecute it, and by his neglect suffered the defendant to have the judgment affirmed without reference to the merits. If the running of the statute could be thus interrupted and suspended, the spirit and policy of the statute, which

declares that "In all actions of trespass to try titles to lands, commenced within the time limited by law, the plaintiff shall proceed with all convenient expedition to the trial of the same," (O. & W. Dig., Art. 2043) might certainly be defeated.

The failure to prosecute the suit to a decision on the merits, was as much the fault or negligence of the plaintiff as if he had suffered a nonsuit, or had suffered the case to be dismissed for the want of prosecution, and it is conceived the consequence must be the same. The decision sustaining the demurrer and the failure to amend, being, in effect, a dismission of the suit, it is as if no suit had in fact been brought. The running of the statute was not interrupted, but, having commenced, it continued to run down to the time of bringing the present suit.

The question of pleading discussed in argument, that is, whether it was necessary in this action for the plaintiff to reply to the plea of the statute the exception relied on to take the case out of its operation, is not properly presented by the record for decision. If evidence had been offered by the plaintiff to prove the alienage of his vendors, with a view to bring the case within the exception of the operation of the statute in favor of alien heirs, the defendant might have raised the question of the necessity of pleading the exception, by objecting to the admission of the evidence the want of a foundation for its introduction in the pleadings. And it would seem that the objection must have been sustained. It is only where the defendant introduces evidence under the plea of "not guilty" in the action of trespass to try title, in support of defences of which he has not given notice by his pleading, that the plaintiff is allowed to introduce evidence in avoidance of such defence without pleading the matter of avoidance. And this arises from the necessity of the case. The plaintiff cannot be required to plead to meet defences of which he has not had notice by the pleading of his adversary. But the statute of limitations can not be given in evidence under the plea of "not guilty," as other defences may. It must be pleaded specially in this as in any other action. And there is therefore the same reason to require the plaintiff to reply to any exception on which he may rely as an answer to the statute in this as in any other action.

We are of opinion that the judgment be reversed and the cause remanded for further proceedings.

Reversed and remanded.