## J. W. FLANAGAN v. P. M. PEARSON.

(Case No. 1692.)

1. LIMITATION.—The bringing of a suit for land which is voluntarily abandoned or dismissed will not interrupt the running of the statute of limitations. Following Connoly v. Hammond, 58 Tex., 11, and other cases cited. The same rule applies to one who was an intervenor in such dismissed suit, and who, being in possession of the land, caused another party to be made defendant; the original suit being dismissed, the statute did not cease to run as against such new defendant and in favor of the intervenor in the former suit.

2. PURCHASER PENDENTE LITE.— A purchaser of land *pendente lite* is as conclusively bound by the results of the litigation as if he had from the outset been a party thereto.

3. LANDLORD AND TENANT.— Before a tenant can begin to acquire a prescriptive right he must repudiate the tenancy and give his landlord notice thereof.

4. SAME.— One who receives possession of land from another as his landlord must openly repudiate the tenancy thus begun and give his landlord notice thereof, before an attornment by him to a stranger will have the effect to constitute his possession adverse to his original landlord and thus make it operate as a disseizin.

5. VERDICT.— An objection that a verdict was made by eleven men, and that no one signed it but the foreman, will not be considered when made for the first time in the supreme court.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

This cause was before this court on a former appeal. See Pearson v. Flanagan, 52 Tex., 266. The nature of the suit is fully stated in the former report of the case. After the cause was remanded the

defendant filed an amended answer setting up the statute of three years' limitations, and the other defenses relied on at the previous trial. Verdict and judgment for the defendant, N. Cochran, administrator of the estate of P. H. Pearson.

*G. H. Gould* and *James H. Jones,* for appellant, cited: Pasch. Dig., p. 765, art. 4621; R. S., p. 464, art. 3197; Shields *v.* Boone, 22 Tex., 197; Cunningham *v.* Frandtzen, 26 Tex., 39, 40 and 41; Horton *v.* Crawford, 10 Tex., 391; also Ranger *v.* Bedell *et al.,* Galveston term, 1883; Angell on Limitations, sec. 392; Mason *v.* McLaughlin, 16 Tex., 29; Gibson *v.* Fifer, 21 Tex., 264; Rorer on Judicial Sales, secs. 852, 856; Chamblee *v.* Tarbox, 27 Tex., 139; Taul *v.* Wright, 45 Tex., 394; Pearson *v.* Flanagan, 52 Tex., 266; Pearson *v.* Hudson, 52 Tex., 352; Johnson *v.* Crawl, 55 Tex., 571; Hughes *et al. v.* Duncan *et al.,* Texas Law Reporter, September number, 1883, p. 275.

*N. G. Bagley,* for appellee.

WALKER, P. J. COM. APP.— The court below did not err in treating the litigation in which the parties to the suit of N. J. Moore *v.* Allen Norris, and in which the parties to this also participated as parties during its pendency, as interposing no impediment or bar to the running of the statute of limitations in favor of the defendant Pearson against the plaintiff in this action. The suit was brought by Moore against Norris, and was dismissed by Moore; or, rather, what was equivalent thereto, dismissed by order of the court for want of the required bond for the costs of suit. During its pendency the land in controversy in it was sold as the property of Flanagan, and Pearson, the purchaser, became a party by intervening in it as such, and caused Flanagan to be made also a party defendant. It was held in Shields *v.* Boone, 22 Tex., 196, that the bringing of a suit for land which is voluntarily abandoned or dismissed for want of prosecution will not interrupt the running of the statute of limitations. And see Hughes *v.* Lane, 25 Tex., 356; Highsmith *v.* Ussery, 25 Tex. Sup., 96; Connoly *v.* Hammond, 58 Tex., 20.

Under the authority of these cases, Moore, the original plaintiff in the suit referred to, could not have made the former pendency of his suit available in a second action for the land, so as to operate as a bar to the running of the statute of limitations in favor of the defendant Norris during the period of its pendency; and the intervention of Pearson in the suit, and making Flanagan a defendant

at the intervenor's instance, do not vary the application of the principle as to such additional parties. The suit having been dismissed for failure, in effect, to prosecute it, no consequence attached to that controversy which could affect the rights of the parties to it who claimed the benefit of the statute of limitations. That Flanagan, who was brought in as a defendant by Pearson, an intervenor, cannot occupy a position more favorable than that of the original parties to the suit, is a self-evident proposition. He, however, is not seeking to avail himself of the benefit of the running of the statute of limitations in his own favor during the pendency of that suit, but urges that Pearson, whose attitude towards him in it was that of an actor or plaintiff, cannot in this action make his possession available under his defense of the statute of limitations. Clearly, the rights of Pearson, he being in possession and holding adversely to Flanagan, and whom he had caused to be brought into the litigation as a defendant, were not affected in respect to claiming, in a subsequent suit brought against him by Flanagan, the benefit of his adverse possession under the statutes of limitation.

It is claimed by the appellant that Pearson, being a purchaser *pendente lite* from Norris, the defendant in the suit of Moore against Norris, he cannot have the benefit of the statute of limitations for possession of the land during the period of time intervening between the date of his purchase and that of the final disposition of the suit. The case of Tilton *v.* Cofield, 93 U. S., 168, cited in the brief of appellant's counsel, maintains the well-settled and unquestionable doctrine that a purchaser of property *pendente lite* is as conclusively bound by the results of the litigation as if he had from the outset been a party thereto. This doctrine, however, has no application, we think, to the question under consideration. No results were attained in the suit referred to, decisive of any issue between the parties; and, as has been seen, for that reason, the litigation between the parties afforded no impediment to the running of the statute.

It is assigned as error that the court erred in instructing the jury that, if Ames went into possession of the land as the tenant of Pearson, he continued to be his tenant all the time he remained on the land, even though, after getting possession of it through Pearson or his agent, Bagley, he subsequently treated the plaintiff as his landlord. This instruction, as stated, was given by the court, adding as follows: "In other words, he could not get possession through Pearson, and by attorning to another destroy the possession of Pearson."

There was no error in the above instruction to the jury. The

doctrine stated in it is distinctly recognized as law in Gillespie *v.* Jones, 26 Tex., 347; citing Pleak *v.* Chambers, 5 Dana, 60. A mere disclaimer of the landlord's title and attorning to another does not operate as a disseizin of the landlord, unless he elects so to consider it, as he may do. 4 Wait's Act. & Def., 260; citing Blue *v.* Sayre, 2 Dana (Ky.), 213. An adverse possession, continued for the time limited by statute, becomes a title; but before a tenant can begin to acquire any prescriptive right, he must repudiate his tenancy and give his landlord notice thereof. Stacy *v.* Bostwick, 48 Vt., 192 (4 Wait's Act. & Def., 260). Even after he has acquired a hostile title he cannot, as a general rule, set it up against his landlord until he has first restored him to possession. 4 Wait's Act. & Def., 261; Newton *v.* Roe, 33 Ga., 163; Lowe *v.* Emerson, 48 Ill., 160.

An attornment by a tenant to a stranger is absolutely void as against the landlord, unless it is made with his consent or pursuant to or in consequence of a judgment or order of court, or is made to a mortgagee after the mortgage has become forfeited; and, except in such cases, it cannot change his possession so as to make it adverse. Nor can one who goes into possession as a mere squatter, disclaiming title, by secretly attorning to a stranger, make his possession adverse to the true owner. 4 Wait's Act. & Def., 261; Gay *v.* Mitchell, 35 Ga., 139.

It is urged by the appellant's brief that it does not appear from the evidence that Ames did not hold under Pearson except from year to year, and that after the expiration of his term of lease, presumably, as he suggests, from year to year, that the relation of landlord and tenant thus being terminated under such a contract, that the tenant might disclaim his landlord's title, retain possession and attorn to Flanagan. We do not think that position maintainable. He having received the possession of the land from Pearson must openly repudiate his tenancy thus commenced and give his landlord notice thereof, before an attornment by him to a stranger will have the effect to constitute his possession adverse to his original landlord, and thus make it operate as a disseizin. "Where a possession is commenced rightfully and with the consent of the owner, as in the case of a tenancy, nothing is to be presumed to make it adverse. Mere holding over does not have that effect." 4 Wait's Act. & Def., 260; Gwynn *v.* Jones, 2 Gill & J. (Md.), 173. "A tenant cannot attorn to one who has acquired a title hostile to that of his landlord, though it be a better title; and if he do so, and take a lease from the one to whom he has attorned, promising to pay him rent,

he may have to pay both of his lessors, since the privity of estate with his first lessor is not destroyed by such attornment, and he would be estopped by his lease to deny his second lessor's title." 1 Wash. Real Prop., 562; Bailey v. Moore, 21 Ill., 165. The same author adds: "If the tenant surrenders the possession which he holds of the lessor, or surrenders his lease so that the lessor has a reasonable time and opportunity to retake the possession, the tenant may take a new lease from one claiming adversely to his original lessor, and dispute the title of the latter. If, moreover, the term of the lessee shall have expired, it seems he may be at liberty to dispute his landlord's title, after the expiration of his lease, though even then it would seem, before he may do it, there should be some open and explicit disavowal and disclaimer of holding under the lessor, brought home to the knowledge of the latter." Id., 562. . . . And again: "But it seems that he ought, in all these cases, to give notice to the lessor of his abandoning or holding adverse possession, that he may not take advantage of the confidence reposed in him by the lessor in putting him into possession of the estate, to deprive him of any rights which the lessor had thereby yielded to his keeping. If, therefore, he were to purchase a better title than that of his lessor, he ought, nevertheless, to surrender possession to his lessor before he seeks to avail himself of his new title against his landlord." Id., p. 563. And see Fuller v. Sweet, 30 Mich., 237; 18 American Rep., 125; also Byrne v. Beeson, 1 Doug. (Mich.), 179.

If the privity existing in the relation between Ames and Pearson denied to the former the right to disavow the latter's title and to set up his possession as adverse without giving notice to Pearson of his disclaimer of holding possession longer under him (even though the term of the lease may then have expired), it must follow that Ames' possession under such circumstances cannot, a fortiori, inure to the advantage of Flanagan so as to enable him to convert Ames' attornment to him into a possession under his title, and to have the effect thereby of breaking the continuity of Pearson's possession through Ames' occupancy of the land.

One of the grounds of the motion for new trial, the overruling of which is assigned as error, is as follows: "Because the verdict of the jury was against the evidence, as the evidence was full that the land sold at Pearson sale in March, 1871, for a price grossly inadequate, as the price bid for the land was $66.60, when the evidence is that said land was then worth from $3 to $5 per acre, and because the evidence showed that Flanagan had a large amount of personal

property subject to execution at his place of residence, in Rusk county, Texas, amply sufficient to satisfy said Pearson's execution, consisting of forty bales of ginned cotton, one hundred and fifty thousand feet of sawed lumber, worth $2 per hundred feet, and horses worth $1,200; that plaintiff had never been called on for a levy, and that his agent, Webster Flanagan, had informed a deputy sheriff a short time before said land was levied on that J. W. Flanagan had said property, above specified, on his place subject to satisfy said Pearson's judgment against plaintiff, and there were things said and done by defendant's attorney at the sale of said land by the sheriff that had a tendency and did prevent said land from selling for a better price than it did sell for."

The charge of the court on this part of the case gave the appellant the full benefit of the law, and as favorably to his case as he could have asked, and no objection is made by him thereto. There were various propositions of law submitted to the jury by the charge on other issues, which, under the evidence, may have been decisive of the case, regardless of the supposed erroneousness of the verdict on the facts stated in the foregoing ground for new trial; and besides, it was submitted to the jury in the instructions given under this branch of the case, that they must determine as a fact whether the price bid for the land by Pearson, and for which it was sold to him at the sheriff's sale, was in fact grossly inadequate, taking into consideration the influence which the litigation then pending, concerning the validity of the title to the land, may have had in depreciating its marketable value at sheriff's sale. There was evidence tending to prove, and sufficient to support a verdict in favor of the defendant on the defense of the statute of limitations of three years, and also of the defense that the plaintiff had not instituted this suit within a reasonable time, and also that the price paid, notwithstanding its disproportion to the actual value of the land purchased, was not, under the circumstances, so grossly inadequate as to require the sale to be set aside as an unconscionable bargain which would shock a proper sense of right. A party seeking to reverse a judgment must show that it is erroneous. Chandler v. State, 2 Tex., 309. And it is not sufficient that a judgment does not clearly appear to be right, but it must clearly appear to be wrong, to authorize the court to set it aside. Jordan v. Imthurn, 51 Tex., 276; 28 Tex., 676; Wells v. Barnett, 7 Tex., 584; 8 Tex., 460; 1 Tex., 326. We cannot say that the verdict of the jury is not supported by the evidence; and if the defendant was entitled to a verdict, under the law and evidence upon any one of the issues involved in the case, the judg-

ment will not be deemed erroneous because the evidence may not have warranted a verdict upon some other issue than that one upon which they found their verdict.

Three years' adverse, continuous possession under title or color of title from and under the sovereignty of the soil gives the possessor a title, and under the evidence the verdict was correctly rendered; at least we cannot say that it is wrong.

It is assigned as error that "the judgment recites that only eleven jurors made the verdict, and the verdict was only signed by its foreman, and not by the eleven, which verdict will not support the judgment." It does not appear that any objection was made to the form of the verdict or to the manner of signing it in the court below, nor was the objection now urged presented as a ground for new trial. This question will not be considered for the first time on appeal. The objection ought to have been made at the proper time in the court below, and, failing to do so, it will not now be heard. Williams v. Mudgett, 2 Tex. Law Review, 339 (Consent case, decided by Commissioners of Appeals, Tyler Term, 1883). See Hansborough v. Towns, 1 Tex., 58; Farley v. Deslonde, 58 Tex., 588. The court did not err in excluding the evidence objected to of Mrs. Ames. One portion of it was hearsay, and the residue of it was irrelevant.

The judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted March 21, 1884.]