JAMES CONNOLLY ET AL. V. B. F. HAMMOND ET AL.

1. VOID AND VOIDABLE—TRUST SALE.—A sale made by a trustee who becomes indirectly the purchaser of the trust property at such sale, is not absolutely void, but *prima-facie* voidable.

2. CASES APPROVED.—Erskine *v.* De la Baum, 3 Tex., 406, and Howard *v.* Davis, 6 Tex., 174, approved.

3. LACHES.—When a trustee becomes indirectly the purchaser at a sale made by himself, the *cestui que trust* who desires to set it aside must assert his rights within a reasonable time. Long acquiescence in the sale, after the facts connected with the purchase were known, or by the exercise of reasonable diligence might have been known, will amount to a confirmation of the trustee's action.

4. LACHES—FRAUD.—In Texas the rule is well established, that a party seeking equitable relief against fraud or mistake, is chargeable with laches from the time it was or ought to have been discovered.

5. CASES APPROVED.—Bremond *v.* McLean, 45 Tex., 18, and Carlisle *v.* Hart, 27 Tex., 350, approved.

6. TRESPASS TO TRY TITLE.—As a general rule, in trespass to try title, the plaintiff who acquired a different title from that relied on in his first suit, before the second is instituted, has the same right to assert it in his second suit which would have accompanied it into the hands of a stranger.

6. TRESPASS TO TRY TITLE—EVIDENCE—PRACTICE.—In trespass to try title, the plaintiff, in opening his case, should produce in evidence whatever title he relies on for a recovery. If he neglect to do this, whether the District Court should permit him, in its discretion, after introducing one title and opening his case, to introduce another and additional title in rebuttal, is not in this case determined.

8. EVIDENCE—TRESPASS TO TRY TITLE.—When in trespass to try title a deed has been introduced by defendant divesting of all title an original grantee under whom both claim, and he offers another deed subsequent in date, purporting to convey all the interest of the heirs of such grantee, whether they were really his heirs or not, was a matter no longer material to be passed on by a jury.

APPEAL from Robertson. Tried below before the Hon. Spencer Ford.

Suit brought by Hammond and Hamman to recover the Moffitt league of land.

The opinion states sufficiently the facts applicable to the law as decided, except the discrepancies which exist in the name of Livermore in the two powers of attorney which were referred to in plaintiff's replication. The power bearing date October 4, 1838, was made to Alexander H. Livermore, and the one made February 25, 1839, to Amos H. Livermore. The replication states that these were different men, as their names indicate; "that these powers embraced only in part the same land, and each included land not described in the other, to wit, the first named, one-half of a league in Falls county, titled to Samuel W. White, not referred to in the second, and the second, one league granted to James S. Steele, not mentioned in the first; but if it be true, as insisted on by appellants, that there is a mistake in names, and the two powers are in truth made to the same person, that by the execution of the second the first was revoked; that the deed made by 'A. H. Livermore, as the agent of James S. Steele,' to James Bailey, under which appellants claim title, on the 4th of June,

1839, was made by *Alexander* H. Livermore by virtue of his power of October 4, 1838, to which the deed makes special reference as the authority by virtue of which it was executed, and which was recorded in Robertson county on the same day on which the deed was; that the deed made to Bailey embraces the White land not included in the second power."

Defendant on the trial proved payment of taxes since 1848 and possession of the land since 1869. The briefs in this case were, on both sides, carefully prepared and exhaustive in regard to the many assignments of error made. Only so much is given as will convey the views of counsel on the points noticed in the opinion.

There were verdict and judgment for plaintiffs, from which Connolly appealed.

*H. D. Prendergast*, for appellants.

I. The court erred in permitting plaintiffs to introduce and read in evidence their deeds from the heirs of James S. Steele in rebuttal to title introduced by defendants, first, because plaintiffs had closed their case with the deed from the Moffitt heirs; second, because this Steele title appeared on its face to have been purchased after the institution of the former suit, and after the date of the trespass and ouster, as charged in the petition and as stated in the bill of exceptions. (Menifee *v.* Hamilton, 33 Tex., 690; Markham *v.* Carothers, 47 Tex., 27; 2 Phill. Ev.; 1 Greenl., (Redf. ed.,) 469*a;* McCool *v.* Smith, 1 Black, (U. S.,) 459; Tyler on Eject., pp. 76, 471; Baylor *v.* Neff, 3 McL., 302; 8 Tex., 450; 7 Tex., 57.)

In ejectment, or trespass to try title, it must appear that the title to the premises was in the plaintiffs at the time of the trespass and ouster as alleged in the petition. The trespass is alleged prior to date of plaintiffs' deeds. (Tyler on Eject., p. 383; 8 Pet., 214; Coxe *v.* Joiner, 3 Bibb, 297; Lee *v.* Salinas, 15 Tex., 497; Hearne *v.* Erhard, 33 Tex., 66.)

II. The court erred in giving the sixth clause of the charge and in refusing the sixth special charge asked by defendants,

because the charge makes actual knowledge of the fraud necessary in James S. Steele to start limitation against him without reference to what he might have learned by reasonable diligence, and because there is no evidence to support said charge. (Ripley v. Withee, 27 Tex., 17; Munson v. Hollowell, 26 Tex., 475; 5 Metc., 467; Barnett v. Kelly, 31 Tex., 480; 28 Tex., 145; 17 Tex., 143; Story on Agency, secs. 210, 253–256; Kerr on Fraud, 311; Humbert v. Trinity Church, 24 Wend., 617, marg. pp. 618, 619; Pearson v. Burdett, 22 Tex., 121, 122.)

*Davis & Beall* and *William H. Hamman,* for appellees.

I. That which was originally void, does not by lapse of time become valid. (Broom's Leg. Max., p. 132; 2 Bouv. Inst., sec. 1321; Mason v. Russell's Heirs, 1 Tex., 730; De Leon v. White, 9 Tex., 603; Erskine v. De la Baum, 3 Tex., 416, 423; Gregg v. Sayre, 8 Pet., 248; 1 Story's Eq., sec. 306.)

II. A void act can never be confirmed. (Story on Cont., sec. 162; 1 Story's Eq., sec. 306; 2 Coke's Comm., 295b.)

III. The land was unoccupied in 1839 and until 1869, and a suit for its recovery could not have been maintained during the time the civil law was in force in Texas. By the law of Texas in 1839, good faith, just title, and continued uninterrupted possession for a determinate time were essential to constitute prescription. (White's Land Law in California, Oregon, and Texas, vol. 1, pp. 91, 92, and vol. 2, pp. 82, 83.)

IV. James S. Steele and those who succeeded him were ignorant of the fraud, and by the exercise of no reasonable diligence could they have discovered it, and they are not affected by it. The contract made by Bailey with Livermore to reconvey and the sheriff's deed were never recorded in Robertson county. There is no evidence in the record that would put a party on notice. (Munson v. Hollowell, 26 Tex., 479; Ripley v. Withee, 27 Tex., 17; Emerson v. Navarro, 31 Tex., 334; Carlisle v. Hart, 27 Tex., 354; Meader v. Norton, 11 Wall., 458; Gregg v. Sayre, 8 Pet., 249; Reese v. Med-

lock, 27 Tex., 124; Reeves v. Dougherty, 7 Yerg., 222, 238; 1 Stark. Ev., 9th ed., 537, 538, (589,) 541, (593,) note t; Cooke v. Bremond, 27 Tex., 460; McDowell v. Young, 12 Serg. & R., 129; Meeley v. Collins, 41 Cal., 663; Michoud v. Girod, 4 How., 560; Shannon v. White, 6 Rich. Eq., 100–102; Thrower v. Cureton, 4 Strobh. Eq., 158; Doggett v. Emerson, 3 Story, 740; Homer v. Fish, 1 Pick., 438; Welles v. Fish, 3 Pick., 74; Costigan v. M. & H. R. R. Co., 2 Denio, 616.)

V. Appellees deraign title to the land in controversy from the widow and child of Robert Moffitt, deceased, to whom the land was originally granted, and the fact of his marriage was material.

The evidence introduced by appellants to prove that Robert Moffitt executed a deed to William H. Steele, could not be accepted by the court as establishing the issue so as to authorize the court, under any view of it, to withdraw the issue from the jury; but the evidence was necessarily submitted to the jury in connection with the issue of marriage. (1 Greenl. Ev., (Redf. ed.,) sec. 49; Stephens v. Hix, 38 Tex., 656; Ross v. Gould, 5 Greenl., 204; 1 Phill. Ev., (Cow. & Hill's ed.,) pp. 810, 812, note 220, and authorities cited.)

VI. The order in which evidence is admitted and the time when it may be admitted are matters of practice, controlled by the court during the trial. The party who complains must show that he was surprised and prejudiced by the action of the court. (Martin v. Parker, 26 Tex., 256; Hampton v. Dean, 4 Tex., 459; Pridgen v. Hill, 12 Tex., 374; Markham v. Carothers, 47 Tex., 27; 1 Greenl. Ev., (Redf. ed.,) sec. 469a; 2 Phill. Ev., (Cow. & Hill's ed.,) pp. 914, 915; Wright v. Willcox, 9 C. B., 650; Gosley v. Gosley, 2 Mo. & R., 243; 1 Stark. Ev., 9th ed., 553, (607,) 554, (608,) and notes; Sturt v. Mobbs, Car. & M., 1; Reed's Practical Suggestions.)

VII. In an action of trespass to try title the plaintiffs may rely—by setting it up in an amendment—upon a title acquired after the institution of their suit, and in a second suit they can rely on as many titles as they may have seen proper to pur-

chase before or since the first suit was filed. (Tyler on Eject. and Adv. Poss., pp. 399–403; Barrows *v.* Kindred, 4 Wall., 399; Hunter *v.* Morse, 49 Tex., 219.)

VIII. The object of the suit is to try the ownership of the property,—not the character of the title by which it is evidenced. (Hart *v.* Turner, 2 Tex., 374; Easterling *v.* Blythe, 7 Tex., 214; Peevy *v.* Hurt, 32 Tex., 153.)

GOULD, ASSOCIATE JUSTICE. — Appellees Hammond and Hamman, in March, 1875, brought this their second action of trespass to try title to the Robert Moffitt headright league, the petition being in the usual form, not setting out their title.

By the pleadings of the defendants it appeared that they claimed title as follows:

1. Deed from Robert Moffitt to W. H. Steele, of date August 7, 1835.

2. Deed from W. H. Steele to James S. Steele, of date June 19, 1838.

3. Power of attorney from James S. Steele to Alexander H. Livermore, October 4, 1838.

4. Irrevocable power of attorney from James S. Steele to Amos H. Livermore, February 25, 1839.

5. Deed from James S. Steele, by A. H. Livermore, attorney in fact, to James Bailey, of date June 4, 1839; recorded in Robertson county the same day.

6. Deed from Bailey to Samuel Kimball, of date January 5, 1848; recorded in proper county November 8, 1850.

7. Deed from Kimball to Connolly for undivided half of the league, dated and recorded in 1857.

8. Deeds from heirs of Kimball for the other undivided half to defendant Hough.

To the answer setting up this chain of title plaintiffs replied, setting up the discrepancies in the name of Livermore and other objections to the validity of the power of attorney; also "that the conveyance made by A. H. Livermore, as the agent

of James S. Steele, on the 4th of June, 1839, to James Bailey, was fraudulent and void; that it was made for the purpose of defrauding Steele, and without any consideration paid or to be paid by said Bailey to Livermore as agent of Steele, or to Steele, or to any one for him, or for his use and benefit, and upon the condition that Bailey would hold and own the title for the use and benefit of Livermore, and convey the land to Livermore, or any one designated by him, whenever he should demand such conveyance to be made; that appellants, and those from and through whom they deraign and claim title to the land in controversy, and with whom they are in privity of estate and blood, well knew and had notice at the time of the acquisition of their titles that the transfer from Livermore to Bailey was fraudulent and void; that the appellants, nor either of them, nor those through whom they claim to deraign title from Bailey, paid him anything for the land or for the deed which he made to Kimball; that appellees, nor their vendors, the heirs of Steele, nor said Steele, had any knowledge, or were in any way put upon notice of the fraud perpetrated by Livermore on Steele by making said conveyance to Bailey, but that, on the contrary, they were wholly ignorant of the character of the transaction and never discovered any trace thereof till some time in 1873, when some remarks made by H. D. Prendergast, Esq., counsel for appellants, put them upon inquiry and caused them to have search made, when they found that Livermore died in Louisiana and that his estate was administered in the Second District Court in New Orleans, parish of Orleans, and discovered among the papers in the succession the evidence of said fraud.

The plaintiffs further alleged that Steele, in 1839, moved from Texas to Kentucky, where he died in 1846, never having returned to Texas; that he was in ill health when he left Texas; that he removed on this account and was never restored; that his widow and children did not return to Texas until many years after the death of Steele; that the children were young;

and did not attain their majority till within a few years before said acts of fraud were discovered; that James Connolly, one of the appellants, acquired whatever right and title he has in and to the property in controversy by purchase at sheriff's sale, made, in Louisiana, in the course of the administration of the estate of Livermore, " of whatever right and title A. H. Livermore, deceased, had by virtue of a bond for title made to him by James Bailey"; that the sheriff made a deed to Connolly, in which he copies the Bailey bond; that Connolly never placed his pretended title, derived by purchase at sheriff's sale, on record in Robertson county, but, on the contrary, carefully avoided giving publicity to these transactions, well knowing that by recording his title in Robertson county, where the land lies, and by asserting his rights by virtue thereof, he would develop the facts which would discover the fraud of the conveyance made by Livermore to Bailey; that Kimball, curator of the succession of Livermore, procured a deed to be made to himself by Bailey for the land, and subsequently conveyed one-half the land to Connolly, all without consideration; that Kimball and Connolly colluded and combined to prevent a discovery of the fraud perpetrated by Livermore and Bailey by hiding and covering all traces thereof.

The pleadings of defendants, in reply, set up the lapse of time; acquiescence and limitations; claiming, also, that " it was the intention of James S. Steele and said A. H. Livermore, at the time of the execution by Steele of said powers of attorney, to vest the title to the land described in the power of attorney of February 25, 1839, in said Livermore, or in such person as he might select; that the firm of Steeles & Lewis, of which James S. Steele was a member, was at that time indebted to said Livermore in the sum of $3,100, and that the said lands were intended to be turned over in satisfaction of said debt; and defendants prayed, in the alternative, if the title did not pass from Steele, that the plaintiff be

compelled to pay to defendants the said sum of $3,100, with interest."

It is unnecessary to detail more fully the pleadings of either party.

On the trial the plaintiffs introduced in evidence the grant to Moffitt and a conveyance, dated in 1869, from parties claiming to be the widow and only child of Robert Moffitt, with evidence tending to show that they were so in fact.

The defendants introduced the chain of title heretofore recited; (except the power of attorney of October 4, 1838, the copy of which offered in evidence was excluded;) also evidence tending to show that plaintiffs' vendors were not the widow and heirs of Robert Moffitt. The deed to Bailey recites that it is made by virtue of a power of attorney of date October 4, 1838. The irrevocable power of attorney of date February 25, 1839, constitutes Amos H. Livermore, of the city of New Orleans and State of Louisiana, the attorney in fact of James S. Steele, to sell, "or to mortgage for money," to any person and for such price as he, said Livermore, may deem advisable, three tracts of land, including the Robert Moffitt league. It recites that the proceeds are to be applied to the payment of the debts contracted by the firm of Steeles & Lewis, (composed of James S. Steele, William H. Steele, and Asa M. Lewis,) in the aforesaid city of New Orleans, and the remainder, if any, then to be paid by said Livermore to James S. Steele.

The plaintiffs then, over the objections of defendants, read conveyances, including the Moffitt league, from the heirs of James S. Steele to them, dated in 1871. They also read copies of some of the proceedings of the Second District Court of New Orleans, Louisiana, showing that Samuel Kimball was appointed curator of Livermore's estate July 14, 1840; that he applied in 1846 for an order to sell the interest of the estate in a bond of James Bailey to certain lands in Texas, reciting that the lands had been purchased by the intestate and title taken in Bailey's name, because by the laws of Texas a citi-

zen only could appear as the proprietor of real estate, stating that he had paid the taxes on the land. These proceedings further show a sale by order of the court of Bailey's bond, at public sale, and its purchase by defendant Connolly for $400, and deed to him accordingly. A copy of the bond is set out in these proceedings, of date June —, 1839, containing recitals that Bailey held title for Livermore, he being an alien, and covenanting to make title to him or his assigns when required.

Plaintiffs also read Bailey's depositions, who testified that he knew Livermore in 1839, but had no specific recollection of the transaction further than appeared from the papers.

They also read depositions of two of the children of James S. Steele,—one born in 1835, the other in 1836. They testify that their father left Texas in bad health in 1840, and died in Kentucky in November, 1847. Their father paid no taxes on the land since 1839, nor had his heirs. He told their mother that he had lands in Texas, and she came to Texas to hunt them, and spent much time and money in fruitless search for title papers. Witnesses knew nothing about any transaction between Livermore and Bailey, or of proceedings in the District Court of New Orleans. Their mother and stepfather (Baker) employed an attorney to institute suit for the land. Evidence was adduced showing the institution of a suit against parties on the land, in the District Court, in 1860, on behalf of Baker and wife, for the White half league of land, being one of the tracts included in the conveyance to Bailey.

Plaintiffs also read some of the answers of James Connolly to interrogatories propounded to him by plaintiffs, from which it would appear that he claimed title by reason of his purchase of the title bond at curator's sale, and was disposed to repudiate any subsequent acts of Kimball.

The defendants in turn read the balance of the interrogatories and answers of Connolly, and further extracts from the administration proceedings in Louisiana. From these it appeared that the curator reported himself in possession of the

various title papers from W. H. Steele down to Livermore, including, in addition to Bailey's title bond, a power of attorney from Bailey to Livermore, also of date June, 1839. He also claimed that the lands had been received by Livermore from Steele in payment of the sum of $3,100 due to him by Messrs. Steeles & Lewis, of Matagorda, consisting of a note for $1,473.80, of date August 14, 1838, payable at four months, (which note he proposes to produce to the court,) and of a balance of account due by said Steeles & Lewis to Livermore. It was in evidence that plaintiffs had not paid taxes on the lands.

The trial resulted in a verdict and judgment for plaintiffs, from which defendants have appealed.

To discuss the numerous propositions presented by counsel for appellants under the fifteen specifications of error in his assignment, would require more time than can be devoted to such discussion. Our conclusion is, that the ninth assignment of error, objecting to the sixth clause of the charge as given and the refusal of charges asked, is well taken. The part of the charge given here objected to, is as follows:

"6. If Livermore sold to Bailey for his own benefit, without the knowledge and assent of James S. Steele, and Steele afterwards discovered that the sale was made for the benefit of Livermore, the plaintiffs, who claim under Steele's heirs, cannot now set up the fraud of Livermore after so long a time from the execution of the deed to Bailey, in 1839. In such case their demand has become stale and barred by the lapse of time. But the plaintiffs, and those from whom they claim, namely, James S. Steele and his heirs, would be excused for not resisting the conveyance from Livermore to Bailey, if it be shown from the evidence that neither James S. Steele nor his heirs discovered the said fraud; that is, if it be shown from the evidence that they were ignorant of the fact that any fraud had been committed (if you should find that any was committed) until 1873.

"The burden of showing that the said fraud (if any was

committed) had not been so discovered, is upon the plaintiffs, to entitle them to set it up after the lapse of time since it is alleged to have been committed, in 1839; and if they have not so shown from the evidence, your verdict will be for defendants."

Charge asked by the defendants and given:

"The jury are instructed that an authorized act of an agent may be ratified by the acts of his principal, or by the long acquiescence by the principal in the act of his agent, when he knew, or by reasonable diligence might have known, of the act; and you are instructed that, under the circumstances of this case, more than thirty years' delay by James Steele and his representatives raises a presumption of law that he knew of and ratified the acts of Livermore, his agent.

"Given with this qualification, that such would be the presumption unless the evidence shows that Steele and his heirs were ignorant of the said acts of Steele's agent."

Instructions asked by counsel for defendants and refused: "You are instructed in this case that lapse of time bars a fraud actually committed, if the party defrauded, or his representatives, acquiesce in said fraud for an unreasonable length of time after he has knowledge of said fraud, or might have learned of it by the use of reasonable diligence; and you are instructed that more than thirty years is an unreasonable delay, under the circumstances of this case, and you will find for defendants."

Appellees, on their part, assert that "the conveyance made by Livermore, as Steele's agent, to Bailey, is void—a nullity—a fraud in law as distinguished from a fraud in fact, and can be attacked at any time." If this position be correct, then the legal title of James Steele was not divested by that void conveyance, but descended to his heirs and passed to their vendees, the plaintiffs, whose legal rights, asserted in a suit of trespass to try title, would not be lost or affected by mere lapse of time. .

The view of the case taken by the court in its charge evi-

dently was, that the conveyance to Bailey was at most only voidable. This is, we think, the rule long since adopted in this court in regard to sales made by a trustee or agent to sell, who becomes himself indirectly the purchaser. Such sales are held to be only *prima facie* voidable. (Erskine v. De la Baum, 3 Tex., 406; Howard v. Davis, 6 Tex., 174, and subsequent cases holding that a mortagee with power to sell may purchase at his own sale; Marsh v. Hubbard, 50 Tex., 203.) The great current of authority is, that such sales are valid until set aside or repudiated by the *cestui que trust*, who must assert his rights within a reasonable time. (Reddick v. Gressman, 49 Mo., 389; Shelton v. Homer, 5 Metc., 467; Jackson v. Von Dalfsen, 5 Johns., 44.)

Jackson v. Von Dalfsen was an action of ejectment on the demise of McCarty, who, being an agent with power to sell, conveyed to a third party without consideration, that third party, in like manner, reconveying to him. The court held the title, whether voidable or not, was not void, but was sufficient to authorize a recovery. (5 Johns., 44.)

But even in those courts which recognize the absolute right of the *cestui que trust* or principal to repudiate the sale, his long acquiescence after he knew, or in the exercise of reasonable diligence ought to have known, of it, may amount to an affirmance. (Miles v. Wheeler, 43 Ill., 128; Marsh v. Whitmore, 21 Wall., 184; Campau v. Van Dyke, 15 Mich., 379; Hawley v. Cramer, 4 Cowen, 743; Hill on Trustees, p. [169] 268.)

In this court the rule is well established, that a party seeking equitable relief against fraud or mistake is chargeable with laches from the time it was or ought to have been discovered. (Bremond v. McLean, 45 Tex., 18; Smith v. Talbot, 18 Tex., 782.)

Carlisle v. Hart, 27 Tex., 350, was a suit of trespass to try title by heirs, who claimed that the defendant, a co-heir with them, had fraudulently procured the grant to issue in his own name alone. The court say: "Whatever right the plaintiffs

in error may have had to the land in controversy as heirs of their deceased mother, Mary Hart, the colonist, was lost to them by their laches and negligence. The record shows that the land in dispute was granted in November, 1834, to Timothy Hart, under whom defendant in error claims, as the only heir of his mother, Mary Hart, the colonist, and that the plaintiffs in error, who were also heirs of said Mary Hart, were of lawful age and residents of the town of Refugio when said title was issued. It cannot be doubted that they must have been cognizant that Timothy Hart had procured the title in his own name, at the time, or soon after it was issued. At least, as by the ordinary diligence used by most persons in reference to their own affairs they would shortly after the issuing of the title have ascertained the fact, the law will charge them with a knowledge of it from the time they might have thus learned it." Their right was held to be stale, and one which equity would not enforce.

In the case before us, the court in its charge adopted a different rule, holding that if it appeared that neither James S. Steele nor his heirs actually discovered the fraud, they were excused from not repudiating the conveyance. The charge asked by defendants, that if Steele "knew, or by reasonable diligence might have known, of the act," acquiescence after the great lapse of time would be presumed, was substantially refused, being so qualified as to amount but to a reiteration of the main charge. In our opinion there was evidence entitling defendants to have the jury pass upon the fact, whether Steele, if really the conveyance to Livermore was not originally made with his knowledge and assent, would not, in the ordinary course of affairs, by the use of that "diligence used by most persons in reference to their own affairs," have discovered the fact that the conveyance had been made, and that in that event the attempt to repudiate the sale came too late. The errors in the charge given and charges refused, on this point, require a reversal of the judgment.

We proceed to notice briefly those questions which are likely to occur on another trial.

Whether the notarial copy of the power of attorney of October 4, 1838, from Steele to Livermore, was rightly excluded, it seems unnecessary to decide. The irrevocable power of attorney was rightly held sufficient to support the deed to Bailey, and it was quite immaterial to show any further or other power of attorney. (Hough *v.* Hill, 47 Tex., 148.)

The plaintiffs instituted their first suit at a time when their only title was from the heirs of Moffitt. Whilst that suit was pending they procured another title from the heirs of Steele. Subsequently, the first suit having been decided against them, they brought this their second action. Defendants object to the admissibility of their title from Steele's heirs, on the ground that the second suit is but a continuation of the first, and that a title acquired after the institution of the suit is inadmissible to sustain an action of trespass to try title. It is enough, to dispose of this question, that the additional title was acquired long before the second suit, and that they had the same right to assert it "which would have accompanied the title into the hands of a stranger." (United States *v.* Hathaway, 4 Wall., 404.) Without inquiring what exceptions there are to the rule relied on, it is enough that the rule does not in its terms or spirit apply.

It was further objected that plaintiffs were erroneously permitted to introduce in rebuttal what was a different title from that produced in opening their case.

Our opinion is that the plaintiffs, in opening their case, should have produced in evidence the title on which they relied for a recovery. Whether, however, the court might not, in its discretion, allow plaintiffs, as it did, to produce their additional title in rebuttal, we deem it unnecessary to inquire.

The court having admitted in evidence a deed made by Moffitt to W. H. Steele, and that deed divesting Moffitt of

all right to the league of land, the court might well have treated the question of fact, as to whether the parties from whom plaintiffs held deeds as Moffitt's heirs, were in fact his widow and only child, as no longer material to be passed upon by the jury.

There are several other questions discussed by counsel, but in regard to which we express no opinion. The fact that but two members of the court are sitting, and that they have found difficulty in reaching satisfactory conclusions, justifies the omission to pass upon questions of importance which it is by no means certain will recur on another trial. The case, although advanced at the preceding term, remained over, undisposed of.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Chief Justice MOORE did not sit in this case.]