W. L. Davidson, of Richmond, offered the following, which was adopted :

*Resolved,* That the thanks of this Association be extended to the resident attorneys of Galveston, for the courtesy extended us during our meeting.

The following was then offered and adopted :

That our thanks are tendered to W. P. Owens, Sheriff of Galveston county, for the use of the court room, and especially to Major M. H. Royston, the Clerk of the Criminal District Court, for his courtesy extended to us, personally and collectively, during our session.

The thanks of the Association were unanimously tendered to General McLeary, for the able and courteous manner in which he had presided.

A memorial, addressed to the Legislature, was presented and referred to the Board of Directors.

On motion, the Association adjourned until its next annual meeting, to be held in the city of Houston, on Tuesday, the 14th day of December, A. D. 1883.

The special meeting will be held in Austin, on the 16th day of January, 1883.

---

## JAMES CONOLLY ET ALS. V. B. F. HAMMOND ET ALS.

### SUPREME COURT, TYLER TERM, 1882.

*Trespass to Try Title—Limitation—Fraud—Stale Demand.*—Fraud, alone, will not stop the running of the statute of limitation. Neither will the mere ignorance of the fraud. There must be both fraud and such concealment that it could not be discovered by the use of reasonable diligence ; and this rule also applies to the question of stale demand.

*Same—Second Suit*—Judgment on demurrer is not such a disposition of trespass to try title, on the merits, as was contemplated by the statute, and such judgment does not suspend limitations.

*Same.*—Where plaintiffs' new title, set up by amendment, is dismissed on demurrer, plaintiffs had the right to have instituted a new and separate suit, immediately after the demurrer was sustained. As they acquiesced in that judgment and did not prosecute and appeal, nor bring their suit until more than one year had elapsed, they could in no event avail themselves of the privilege to bring a second suit, and the bar of the statute was complete.

*Same—Practice.*—If the demurrer was as to matter of form, plaintiffs should have amended, if to matter of substance, and they could not then appeal, because the judgment was interlocutory only, then, to have

availed themselves of the statute they should have reserved the point and have prosecuted their appeal after final judgment, and have brought their second action, if necessary, within one year after judgment on appeal.

Appeal from Robertson county—Opinion by Bonner, J.—H. D. & F. H. Prendergast, for appellants; Davis & Beal and W. H. Hamman, for appellees.

The title to this, the Robert Moffit league, and kindred titles to other lands have been the source of much protracted litigation. By former decisions of this court several of the disputed questions have been settled. (Hough v. Hill, 47 Texas, 148; Connoly v. Hammond, 51 Texas, 635; Hammond v. Hough, 52 Texas, 65.)

The following statement will aid in the proper understanding of this opinion. The suit is one of trespass to try title, instituted March 27, 1875, by the plaintiffs below, Hammond and Hammond, against the defendants in possession, James Connoly et al. A statement first of the title under which the defendants claim will best serve also to show that of the plaintiffs:

Defendants' title:

1. Title from the government to Robert Moffit, dated in 1835.

2. Deed from Moffit to W. H. Steele, dated August 7, 1835; recorded in Robertson county in 1838.

3. Deed from W. H. Steele to James S. Steele, dated June 19, 1838. Recorded in Robertson county in 1838.

4. Irrevocable power of attorney from James S. Steele to Amos H. Livermore, dated February 25, 1839. Recorded in Robertson county in 1870.

5. Deed from Livermore, as attorney in fact for J. S. Steele, to James Bailey, dated June 4, 1839. Recorded same day.

6. Deed from Bailey to Samuel Kimball, dated January 5, 1848. Recorded November 8, 1850.

7. Deed from Kimball to defendants—Connoly for one-half the land, dated and recorded in 1857.

8. Deed from Kimball heirs to Hough for the other half, dated and recorded in 1860.

The last three named were quit-claim deeds.

Amos H. Livermore was a resident citizen of the city of New Orleans, Louisiana. The power of attorney from James S. Steele to him was irrevocable, and gave him full power in his discretion to sell the whole or any part of the lands therein described, including among others the land in controversy ; at such prices as he might deem advisable, and to apply the proceeds to certain indebtedness therein mentioned, and to pay over any remainder to James S. Steele, the maker.

During the progress of this suit the plaintiffs caused to be filed, an affidavit attacking one of the links in defendants' chain of title, and under which, as it will be seen, both parties claim, viz : the deed from Robert Moffit to William H. Steele, on the ground that it was a forgery. This affidavit was, on motion of defendants, stricken out, for the reason, among others, that it was inconsistent with the former claim and proceedings had by the plaintiffs themselves, in this and a former suit in regard to the same subject-matter.

Plaintiffs' title :

The plaintiffs claim title as follows :

1. Deed from the purported heirs of Robert Moffit, the original grantee, of date February 1, 1869.

2. Deed from the heirs of James S. Steele, of dates January 24, and May 8, 1871.

All these were quit-claim deeds, made to the plaintiffs themselves.

The plaintiffs attack the prior legal title under which defendants claim, for reason of alleged fraud and its conceal- ment perpetrated by Livermore upon James S. Steele in this, that the sale made by him as attorney in fact for said Steele to James Bailey, was indirectly made to Livermore himself. As evidence of this a bond of defeasance from Bailey to Liv- ermore is shown, of date June 10, 1839, which recites that, the lands previously conveyed by this Livermore deed to Bailey was held by the latter for the use and benefit of Liv- ermore, to whom they rightfully belonged, the better to hus- band and protect them, as Livermore was an alien.

This bond was not recorded by Livermore, but was found among the papers of his succession : the failure to record it

is relied on by plaintiffs as evidence that the alleged fraud was concealed.

The defendants pleaded not guilty, and among other special defences, that of stale demand and the statute of limitations of three years. To defeat these pleas, the plaintiffs rely on the above alleged fraud and its concealment, and on the further ground that this was a second suit under our statute, and that the first was brought in time to prevent the bar of limitations. The first suit was brought March 27, 1869. The plaintiffs at that time held only their title from the heirs of Moffit. Subsequently, and during the pendency, they purchased from the heirs of James S. Steele also, and set up that title specially by amendment to that suit. This amendment was on demurrer stricken out, and on the first trial plaintiffs relied on their Moffit title only.

That suit resulted in a verdict against the plaintiffs, and subsequently the present suit was brought. Further facts in regard to this will be more fully stated hereafter.

On the trial below of this suit, there was a verdict and judgment for the plaintiffs for the land, and $2500 damages, from which this appeal is prosecuted.

There are sixteen assigned errors in this case. We shall consider those only which are deemed most material and decisive of the merits of this long pending controversy.

On former appeal, it was decided that, although Livermore' himself, was indirectly the purchaser under this deed to Bailey, this did not make the sale absolutely void, but *prima facie* voidable only. (Connoly v. Hammond, 51 Texas, 635.)

On the last trial, the court below withdrew the question of limitation of three years from the jury and refused a special charge upon this question asked by the defendants, for the alleged reason, that, this was a second suit under our statute, and that the first suit had suspended the running of the statute of limitations. This was assigned as errors.

The court charged upon the question of stale demand, but refused to grant a new trial upon the ground that the verdict was contrary to, and against the evidence, a special charge was asked by the defendants to the effect, that under circum-

stances of this case, as a question of law, plaintiffs' claim was a stale demand.

The failure to grant a new trial, and the refusal to give this special charge as asked, was also assigned as error.

These assigned errors will be considered together.

The defendants were in possession under a regular legal chain of title from and under the sovereignty of the soil, and to entitle the plaintiffs to recover, the burden of proof devolved upon them to show a superior title. They claim title with the defendants under a common source, first from the original grantee. Robert Moffit, the plaintiffs claiming under his heir, and the defendants under a deed direct from him to William H. Steele; and subsequent mesne conveyances down to themselves. *Second*, under one of the remote vendees in the chain of title through William H. Steele, *viz: James S. Steele*, the plaintiffs claiming under his heirs, and the defendants under James S. Steele, himself, as one of the links in their chain of title.

It will be then seen, that the two titles under which plaintiffs claim, are wholly inconsistent with each other, for if the title from Moffit down to James S. Steele was valid, it would follow, that Moffit had no interest left which would descend to his heirs, and hence that their deed to plaintiffs, did not pass any title. (Connoly v. Hammond, 51 Texas, 649, 650.)

The defendants before going into the trial made motion to compel plaintiffs to elect upon which of the two titles they would try. This motion was overruled, but in the charge to the jury the court withdrew from their consideration the Moffit title and submitted in behalf of plaintiffs only their title from the heirs of Steele. Upon this title the jury returned a verdict for the plaintiffs.

This case therefore presents the remarkable feature that the verdict and judgment is rendered in favor of plaintiffs upon a title to an essential link in which they had filed an affidavit that it was a forgery.

There is no controversy but that the defendants were in the adverse possession of the land for more than three years next before the institution of the present suit.

This is expressly alleged by plaintiffs in their pleadings. They seek to avoid the statute, however, as well as the plea of stale demand, for the reasons before stated, of concealed fraud and the institution of the first suit in March, 1869.

1.   As to the alleged fraud and its concealment.

Fraud alone will not stop the running of the statue. (Hudson v. Wheeler, 34 Texas, 365.)

Neither will mere ignorance of the fraud. (Tinnen v. Mebane 10 Texas, 255.)

There must be both fraud and such concealment that it could not be discovered by the use of reasonable diligence ; and this rule applies also to the question of stale demand. It is based upon the principle that a party should not be called upon to defend his rights until he has either actual notice that they have been invaded, or the circumstances are such that the law charges him with the duty of enquiry and with the notice to which it would lead.

On former appeal it is said that "in this court the rule is well established that a party seeking equitable relief against fraud or mistake, is chargeable with laches from the time it was or ought to have been discovered." (51 Texas, 647.)

To defeat the legal title of the defendants in possession by a latent equity after so great lapse of time, the evidence should be clear and satisfactory.

The power of attorney from Steele to Livermore was dated February 25, 1839. The deed from Livermore to Bailey under this power of attorney was dated June 4, 1839, and the bond of defeasance from Bailey to Livermore, which is the evidence of the alleged fraud, was dated June 10, 1839.

The first suit was instituted March 27, 1869, nearly thirty years afterwards, and the present suit March 1875, more than thirty-five years afterwards. The power of attorney was executed in the county of Matagorda, then Republic of Texas. James S. Steele was a resident of that county, and Livermore of the city of New Orleans, La., and hence was an alien, and therefore could not hold lands in Texas. It gave to Livermore full authority to sell the lands therein mentioned, or any part thereof, and contains the recital that the proceeds are to be applied " to the payments of the debts contracted

"by the before mentioned firm of Steele & Lewis, of Mata-
"gorda, composed of James S. Steele, William H. Steele, and
"Asa M. Lewis, in the aforesaid city of New Orleans, and
"the residue, if any, to be paid by the said Livermore to
"James S. Steele, the signer of this instrument."

The power of attorney does not show to whom this indebt-
edness was payable, but there is testimony tending to prove
that the firm of Steele & Lewis was indebted to Livermore
in the sum of $3100, and that the lands mentioned were taken
by him in satisfaction of this indebtedness. If it was ever
paid otherwise it is not shown.

The testimony shows that the defendants and those under
whom they claim title have paid taxes on the land for twenty
years or more, but that the plaintiffs and those under whom
they claim have not paid taxes.

For the above, and the further reasons, that Steele,
though he lived for several years thereafter, does not appear
to have ever sought an account from Livermore or from his
estate, although Livermore's deed to Bailey under the power
of attorney was recorded the same day it was executed; the
presumption would be very strong indeed, that the parties
intended that the lands should be taken as full payment and
satisfaction of this indebtedness, and that this form of con-
veyance was adopted as the only means by which Livermore,
being an alien, could control the lands.

That the power of attorney was intended as an absolute
security for this indebtedness in any event, is placed beyond
all doubt by the fact, that it was made irrevocable.

But whether or not it was intended that the lands should
be then taken as full satisfaction of the indebtedness, Steele,
under its terms, had the right, and a due regard to his own
interest and that of innocent third parties, made it his duty,
to make inquiry as to the disposition made by Livermore of
the land. He would be charged with this enquiry after a rea-
sonable time had elapsed, within which the power should
have been executed. He himself lived until November, 1847,
several years after the transaction.

Livermore must have died soon after the deed to Bailey, as
letters of curatorship were issued to Samuel Kimble, as cura-

tor of his succession, in the city of New Orleans, the place of his residence, July 14, 1840. The bond of defeasance from Bailey, the evidence to prove the alleged fraud on the part of Livermore, was filed with the papers of his succession, and open to public inspection. The failure to record it in Texas, can be very reasonably accounted for on the ground, that, as it was made because he was an alien, then, to have placed it upon record would have defeated the very object had in view in its execution. That it was thus made, the plaintiffs cannot complain.

The most appropriate and proper place for Steele to have sought information, (if in fact he had any interest to know), would have been from the curator or from the papers of the succession of Livermore. In regard to this, it was said on former appeal, "as explaining more fully the parts of the same proceedings already adduced in evidence, as primary evidence of the fact, that Livermore's representative publicly claimed the lands at that time, and as showing how readily Steele might have ascertained the fact, if being ignorant of what had been done, he sought some account of Livermore's proceedings under the power of attorney from him, or his representative, we cannot say that the evidence was secondary, hearsay or inadmissable." (52 Texas, p. 71).

Although enquiry or an examination of the papers of this succession, would have put Steele himself, or his heirs, in the possession of this information, as well and as easily as it did the plaintiffs long years afterwards, yet neither he nor they made this enquiry or examination.

The testimony tends to prove, that the parties to this suit, are purchasers for value, without notice of any intended fraud on the part of Livermore. Should they be permitted to suffer by the laches of Steele, or should the purchases from his heirs profit thereby.

Under all the circumstances of this case, we are of the opinion, that even if there was fraud on the part of Livermore, there was no such concealment of it, and no such due diligence to discover it, as should defeat the plea of stale demand, or prevent the bar of the statute. We are inclined to the opinion, that the court might well have given the charge

as asked upon the issue stale demand. However, that may be, we are clearly of opinion, that the evidence did not authorize the verdict under this issue, and that the court below erred in not granting a new trial.

II. Did the institution of the first suit suspend the statute of limitations?

It will be remembered, that, on the trial of that suit, plaintiffs, in their evidence, deraigned title only from the heirs of Robert Moffit, the amendment setting up their Steele title having been dismissed on demurrer, June 4, 1873.

From that judgment no appeal could be prosecuted, it being interlocutory, but none was prosecuted from the final judgment rendered therein March 4, 1875. The present suit was instituted March 25, 1875, within less than one year after the final trial on the merits of the Moffit title, but more than one after judgment sustaining demurrer to the Steele title. In this suit plaintiffs relied on both their titles, but the court withdrew the Moffit from the jury, and the verdict and judgment rendered in their favor must have been based solely on their Steele title. The question then is sharply made, whether the present suit, which resulted in a verdict and judgment in favor of the plaintiffs on their Steele title, is but a continuation of their first suit in which they set up their title by amendment, but to which a demurrer was sustained; or whether it is, as to that title, a new and independant suit? If the former, then the statute was suspended; if the latter, the bar was complete.

Our statute on this subject—in analogy to one as far back as the days of James I. (Sec. 4, Stat. 21, James I, Ch. 16, Appendix Angel on Limitations, 3,) provides, that a "verdict and judgment" against the plaintiffs, in an action of trespass to try title, brought within the time limited by law, shall not be conclusive and definite against him, but that he may at any time within one year thereafter, or within one year after its affirmance by the Supreme Court, have the right to bring his second action. (P. D., Arts. 5298–9.)

Under this statute it has been uniformly held, that, if the first suit is prosecuted to "verdict and judgment," it would stop the running of the statute.

The statute repeatedly uses the words "verdict and judg-ment," and makes no provision in regard to judgments on demurrer. Being an exception to a general rule of public policy, it may well be construed to apply to cases of judgments on verdicts only. In the case of Hughes v. Lane, 25 Texas, 365, this very question was raised and discussed, and it was held that a judgment final on demurrer in favor of the defendant in an action of trespass to try title, is not such a disposition of the case on the merits, as was contemplated by the statute, and that such judgment therefore does not sus-pend limitations. Wheeler, Ch. J., in construing the statutes, says, that it speaks of a "verdict and judgment" and man-ifestly intended a decision of the case on the facts, and a judgment upon the merits, which but for the statute, would be a bar to another action for the same cause.

In other parts of the opinion he says, that in our practice, the effect of a judgment sustaining a demurrer, is a dismissal of the suit, if the plaintiffs fail to amend, and this whether the demurrer be general or special. That the dismissal is rather the effect of the failure to amend than of the judgment sustaining the demurrer.

It would seem that the reasoning of the learned judge in that case would apply more particularly to a case in which a special demurrer would lie for want of formal averments; as on principle, if not restrained by the words of the stat-ute, a judgment on demurrer might come fully within the spirit and intention of the statute if it called into question, not informal allegations setting out a good cause of action, but the intrinsic merit and validity of that cause of action itself however formally it might be stated. This would seem to be as much a trial upon the merits as one on verdict, the former upon facts admitted to be true, the latter upon facts proven.

Such in effect is the latest decisions of this court upon the question,

Edgar v. The City of Galveston, 46 Tex., 521.

Whether the demurrer under consideration was general or special, or upon what ground it was sustained, does not ap-pear, and we think, independently of this question, that as

to the Steele title, this was not a second suit, under the statute.

Generally under our practice an amendment, under certain restrictions, may set up an entirely new and independent cause of action. If intended as the only cause of action relied on, the costs of the former proceedings should be paid, as the amendment in its legal effect would be a discontinuence of the suit as first brought.

But whether intended as a substitute for the original cause of action, or as an additional one, it is substantially such a new suit as to require the opposite party have notice of it before judgment should be taken against him; and it does not have the effect to stop the running of the statute by relation back to the date of the institution of the suit, but the statute if it had previously commenced to run, will be suspended only' from the date of filing the amendment. (Henderson v. Kissam, 8 Texas, 46.)

Although the first suit and the amendment setting up the Steele title were in regard to the same subject matter—the Moffit league—yet they were upon distinct and independent causes of action, and each should have been pleaded with full and appropriate averments; particularly so, as they were inconsistent and as the Steele title was obtained after the institution of the suit. As held by this court on former appeal, the plaintiffs had the same right to assert this new title which a stranger would have had (51 Texas, 649), citing through mistake U. S. v. Hathaway for Barrows v. Kindred, 4 Wall, 404.)

By this it was of course intended that it should be asserted in a proper manner and with appropriate averments.

Having this right the plaintiffs could have instituted a separate and independent action. Instead of doing this, however, they set up their new title by amendment to one already pending, thus making it a dual suit upon both causes of action. This certainly did not give to the plaintiffs, as to this new cause of action, any greater rights than they would have had, if in fact they had instituted a distinct and independent suit. If they had done this, and a demurrer had been sustained to the original petition, as it was to the amended petition in this case, and if it should be held that

this would be such judgment on the merits as was contemplated by the statute, then clearly, to have availed themselves of the benefit of the statute, the plaintiffs must have brought their second suit within one year after judgment against them on the demurrer and the dismissal of their action. This would have been consistent with that " expedition " required by the statute. The same rule should apply to the judgment dismissing the amended petition in this case. If the demurrer was as to matter of form, the plaintiffs should have amended; if to matter of substance, and they could not then appeal because the judgment was interlocutory only, then, in any event, to have availed themselves of the statute, they should have reserved the point and have prosecuted an appeal after final judgment, and have brought their second action, if necessary, within one year after judgment on appeal.

The plaintiffs had the right, and there was no legal impediment to its exercise, to have instituted a new and separate suit, immediately after the demurrer was sustained. They acquiesced in that judgment, however, as they did not prosecute an appeal, and yet their suit was not brought until more than one year had elapsed, and hence the plaintiffs could, in no event, avail themselves of the privilege to bring a second suit, and the bar of the statute was complete.

There was error in the action of the court withdrawing from the consideration of the jury the question of the statute of limitations, and in the refusal of the special charge asked upon this subject; it is due the learned judge who presided in the court below, to say, that, from a note appended to this charge, he refused it, from a misconception of the opinion on the last appeal of this case.

For the errors above mentioned, the judgment below is reversed, and the cause remanded.