MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. J. E. SMITH.

Decided March 1, 1902.

**1.—Limitations—Promise of Employment—Fraud—Diligence in Discovering.**

Where plaintiff, suing for personal injuries, sought to avoid the bar of the two years statute of limitations on the ground of a fraudulent promise of defendant to give him employment for life, and the evidence showed that for three and one-half years, excepting two days of work, he was repeatedly and continuously denied employment by defendant, his failure to sooner discover the fraud was due to want of reasonable diligence, and the court should have instructed that his action was barred by limitations.

**2.—Fraud in Procuring Release of Damages—Master and Servant—Evidence.**

Evidence in an action for personal injuries, to which defendant pleaded an unconditional written release by plaintiff for a given sum of money, held insufficient to justify the court in submitting to the jury the issue of fraud in the procurement of the release.

Appeal from Hill. Tried below before Hon. Wm. Poindexter.

*T. S. Miller* and *Ramsey & Odell,* for appellant.

*Wear, Morrow & Smithdeal,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This is a suit by J. E. Smith against appellant for damages for injuries alleges to have been received by him on the 13th day of January, 1892, while in the employ of appellant. The injuries were alleged to be permanent. The appellee also alleged in his petition that shortly after the injuries he instituted a suit against appellant, and thereafter, its agents, with the fraudulent intent of securing a dismissal of said suit and a release of his claim for damages, proposed to him that it would give him $300 and would thereafter employ appellee for life in its service, whenever he would apply for such employment, and would pay him for his services during his lifetime not less than $60 per month, and that on the faith of these promises he accepted the $300 from appellant and executed a release; that these promises were fraudulently made with no intent of being performed. That thereafter he went to work for appellant and worked for about two years and then laid off for some six or seven months with the consent of appellant, and thereafter, on the 23d day of April, 1897, resumed his employment with appellant and worked for two days, after which time he was informed by the defendant company that it could not use him any more; that he continued to apply for work expecting and be-

lieving that appellant would comply with its contract, and that he made repeated and sundry efforts to carry out his part of it; that appellant did not give him employment, and that about the 1st of March, 1900, appellant informed him that it could not and would not use him any more, and would not employ him further, since which time it has refused and failed to give him employment. That appellee in his petition tendered the $300 paid him into court, but did not in fact tender any money. The petition alleged his age and life expectancy, and claimed damages in the sum of $20,000. The petition was filed on September 10, 1900.

The appellant answered by general denial and also pleaded, in bar of appellee's recovery, releases dated December 5, 1892, and December 23, 1892, wherein and whereby appellee released appellant from all damages by reason of the injuries aforesaid, and further pleaded the statute of limitations of two years and of four years in bar of plaintiff's suit; and further, that the injuries resulted from and were due to risks assumed by him on entering the employment of appellant, and further pleaded contributory negligence.

The appellee, by supplemental petition, pleaded under oath that the releases issued were not binding because the same were procured by fraud of the defendant, and that it represented to him that if he would sign such releases that the company would give him employment as alleged in his petition, and the said promises were not made on the part of appellant in good faith, but were made with the intention of securing appellee's signature to said release by fraud; that the chief inducement to sign the same was the false and fraudulent promises on the part of appellant to give him employment, which promises and consideration failed, and he tenders again in his supplemental petition the $300 alleged to have been paid him.

Appellee further pleaded that the pleas of limitations interposed by appellant were not available to it, because, as alleged in the petition, the appellant pretended that it would comply with the agreement and give him employment, and falsely and fraudulently represented that it would do so, and deceived plaintiff into the belief that it would comply with said agreement until a short time ago, to wit, until less than a year before the filing of this suit.

The case proceeded to trial and resulted in a verdict and judgment for plaintiff on March 23, 1901, in the sum of $4000 and costs. Appellant's motion for a new trial was overruled, it excepted, and has duly perfected an appeal.

*Opinion.*—1. The fifth assignment of error complains of the eleventh paragraph of the charge of the court submitting the question of limitations. This charge tells the jury that plaintiff's cause of action is barred unless they have found that the release was obtained by fraudulent representations, and that the defendant company, by its fraudulent conduct, led plaintiff to believe that it would carry out said contract with

plaintiff and give him a lifetime employment, and that plaintiff believed and acted thereon, and that he did not discover, and could not, by the exercise of ordinary diligence, have discovered the fraudulent purpose of defendant within a period of not more than two years before the bringing of suit. The facts upon which this charge is based are: Appellee, who was a conductor on one of appellant's freight trains running between Dallas and Denison, was injured near Garza, a station on appellant's road, in attempting to make a coupling of its cars on the night of January 13, 1892. He instituted suit in the District Court of Grayson County to recover damages for said injuries. After he had filed suit, J. W. Maxwell, appellant's superintendent, sent for him and they had a conversation about the matter. Maxwell said to him that he had been working for the road a long time and that he ought not to have brought the suit; that the railway company would treat him right; that he replied to Mr. Maxwell that he would not have brought the suit if he had thought he would have been treated right; that Mr. Maxwell said to him, "You draw this suit and we will take care of you for life." Smith testified: "I spoke about something to fix up that right, and he said, 'We will give you a job for life at not less than $60 per month, and you can build up in the line of office work just the same as you have in the transportation department, and could probably be made operator or agent.' That he didn't ask Mr. Maxwell at that time whether he would pay him anything or not. That Maxwell said that I might go ahead with this law suit and get all the way from one to six thousand dollars, and wanted to know if I wouldn't rather have a job as long as I lived where something comes in every month. I thought about it and told him yes; for him to fix up the thing and I would go to work; that I wanted to live in Waco, I had about $3500 saved up and I put that into a home, figuring on a job as long as I lived. I signed a release. They sent the paper down there to this agent, Bower, that I was working for. I signed that paper and never read it; I never looked at it; I never thought about them treating me wrong; thought that I would be treated right. When I accepted this position I relied on the proposition he made me; that was in the main this, that he, Bower, said something about I'll allow you three months' time, which is $300, and that was the draft they sent me; they afterwards sent me a draft or something of the kind for $300. After settlement they gave me a job at $60 per month. I worked there two years. I was overworked; I told the agent I would have to lay off and rest. When I went back to work he said, 'You have no job.' I went to him twenty-five times after that, I guess, and bothered after him and tried to get my place back, and finally he put me to work." These statements were made on direct examination. On cross-examination he said that when he got the $300 Mr. Standifer came to Waco and he gave him what he promised to, $100. He repeated that he signed these papers without reading them, and that he could hardly read at all; that he would have signed anything in the world they told him to; that Bower said to him, "Here's something for you to sign; you

are going to work here and I'll take care of you." He said again that Standifer was mad and tried to make him feel bad over his settlement, "but I felt all right if I had a job." "I wrote him a check for $100, he wrote me out something, I don't know what it was; I didn't read it; I thought it was a receipt for the $100 I paid him." That he had made various demands for employment to Bower and other agents of the railroad.

If it be conceded that the plaintiff was induced to dismiss the suit then pending in the District Court of Grayson County by the fraud of the defendant's agents, this would not prevent the statute of limitations running from the time he discovered, or should, in the exercise of ordinary diligence, have discovered the fraud. Undiscovered fraud will prevent the running of the statute of limitations, provided the failure to discover the fraud is not attributable to the want of proper diligence by the party asserting it. Calhoun v. Burton, 64 Texas, 516; Connaly v. Hammond, 58 Texas, 11.

The evidence shows that about two years after the appellee went to work for appellant at Waco he took a lay off to get some rest, because he says he was overworked. This seems to have been about the first part of the year 1896. About April thereafter he applied to the company to be taken back to work. He was told that he had no job. He testified that after that he applied to the agent as many as twenty-five times to get work. Finally in April, 1897, he was put back to work, and after working two days the force was ordered reduced and appellee was let out. Since that time appellee has made repeated requests to be taken back to work without avail. This suit was instituted on September 10, 1900, three years and a little over four months after the company had terminated his employment. Ought not the appellee to have discovered more than two years before the filing of this suit that appellant did not intend to give him employment? After he took his layoff to rest up, he says that when he returned and asked to be put back to work he was told by the agent that "they had no work for him and that he had lost out." This expression does not indicate that the agents of the company were attempting to conceal from Smith the fact that they did not intend to longer employ him. After hounding after them, as he says, for six or seven months, he was put back to work and after working two days was again let out. There is not an iota of evidence that the agents and officers of the company led him to believe that he would be again employed, or that they in any way concealed from him their determination not to again employ him. We are of the opinion that the appellee's own testimony shows that his failure to ascertain that the company did not intend to give him employment was attributable to his failure to use ordinary diligence to discover that fact. The appellant requested a charge instructing a verdict for it on the ground that the evidence showed that appellee's cause of action was barred by the statute of limitations of two years. There was error in the above charge of the court on limitation, and in refusing appellant's special charge.

2. ·The appellant contends that the court erred in the tenth paragraph of its charge in submitting to the jury the question of fraud in connection with the releases read in evidence. This contention is based on the ground that there was no evidence showing or tending to show fraud in procuring said releases. The release dated December 5, 1892, is headed as follows: "J. E. Smith, plaintiff, v. Missouri, Kansas & Texas Railway, defendant: In the District Court of Grayson County, Texas," and is to the effect: "That the railway company having promised and agreed to pay the undersigned plaintiff the sum of three hundred dollars in full settlement of said suit and of the alleged claim and cause of action therein sued on, I hereby agree, in consideration of such promise and said agreement on the part of said company, to dismiss said suit and to accept said sum in full settlement of all claims against it, and for all injury and damage sustained by me, and do .hereby, in consideration of such agreement on the part of said company to pay me the sum of three hundred dollars, release it from all claims and causes of action whatsoever." This was presented to appellee by appellant's agent, Bower, who said.: "Smith, here is something for you to sign. You are going to work here and I'll take care of you." The release was thereupon signed by J. E. Smith and his signature witnessed by two witnesses. An account payable in favor of appellee for $300 was afterwards made out by the company and sent to its agent at Waco, and was by him presented to appellee, who signed it and received a check for the money named therein. This account stipulated "that it was in full settlement and satisfaction of all claims and demands against the railway company for personal injuries received while in the employ of said railway company as conductor, left hand crushed off while making coupling between cars on train No. 76, near Garza, Texas, January 13, 1892." The amount stipulated therein to be paid was paid to appellee. This was during the first part of January, 1893. After appellee had agreed to settle the case, I. M. Standifer, Esq., one of appellee's attorneys in the suit in Grayson County, went to Waco and was paid by appellee $100. He wrote out an order on the clerk to dismiss the suit and Smith signed the same in Standifer's presence. Smith told Standifer that he had received $300 in settlement of the suit. He did not tell Standifer he was to have lifetime employment by the company. Standifer told Smith he had made a bad settlement. The statements made by Maxwell promising appellee a lifetime job if he would dismiss his suit were made at Denison, and before appellee went to work for the company. The releases were signed by him at Waco, and after he had begun to work for the company. Appellee testified that agent Bower had the release there in the front office and said to me, "Smith, here is something for you to sign. You are going to work here and we,—I will take care of you; I will make a good place for you."

Unless this statement shows fraud there is no testimony in the record showing fraud in the signing of the releases. There is nothing in this statement showing that appellee was to be given a lifetime job. Ap-

pellee did not call for a more specific statement as to what Bower meant by the remark that he would take care of him. The release plainly showed that it was a settlement of the suit and a release of his demands in consideration of $300. But appellee says he did not read the release. He does not say that he was prevented from reading it by the agents or officers of the railway company. It was some time after the signing of this release before the voucher for the $300 arrived. Appellee induced the agent, Bower, to write and hurry up the voucher. The voucher or account payable was presented and signed without objection or protest by appellee. He does not say that Maxwell promised him $300 in addition to a life job. He explains that the money, $300, was paid him voluntarily by the company.

It is held that in order to set aside a release on the ground of fraud the evidence must be clear, precise, and convincing. Slight parol evidence is insufficient. Railway v. Burke, 1 App. C. C., sec. 946. The fact that appellee did not read the release before signing was not sufficient, under the facts connected with his signing, to justify the jury in finding there was fraud in the execution. Insurance Co. v. Harris, 64 S. W. Rep., 871. We are of the opinion that the evidence did not authorize the court to submit to the jury the issue of fraud in the procurement of the releases, and that there was error in so doing.

3. Complaint is made of the eighth paragraph of the charge, in that the defense of contributory negligence and assumed risk are confused, in that, in order for the jury to find for the defendant on assumed risk they must also find that appellee was guilty of contributory negligence. The charge is subject to criticism. It is not clear but that the jury may have inferred that if plaintiff knew of the danger of making the coupling, by reason of the difference in the height of the couplers, and therefore assumed the risk, still he could not recover, unless in making the coupling he was negligent. Appellant's special charge number 6, which was given, states the law of assumed risk correctly, and we think, in view of it, the jury would not be misled by the main charge.

We conclude that the court should have instructed a verdict for defendant on its plea of limitations of two years. This holding requires a reversal of the judgment, and as it appears the evidence on limitation was fully developed, we will render such judgment as should have been rendered by the trial court. The judgment is reversed and rendered for appellant.

*Reversed and rendered.*

Writ of error refused.